## STATE *vs.* ELWOOD WIGGINS.

*Criminal Law—Murder of First Degree—Second Degree—Manslaughter—Evidence—Malice—Self-Defense—Confessions.*

1.    In the trial of one charged with murder, testimony offered by the defendant showing the general reputation of the deceased for violence, is relevant and material to the issue raised by the plea of self-defense, and proper to be considered by the jury (if they should find from the evidence that an actual assault was first made by the deceased upon the prisoner), in determining whether the prisoner was, at the time of the killing, in reasonable fear of death or great bodily harm.

2.    A free and voluntary confession is generally deserving of the highest credit, because it is against the interest of the person making it, and is presumed to flow from a sense of guilt.    The whole of what the prisoner said on the subject, at the time of making the confession; should be taken together and considered by the jury; but all parts of a confession; whether for or against the prisoner, are not necessarily entitled to equal credit.    The duty of the jury in respect to a confession, and in respect to the prisoner's own testimony, and the testimony of other witnesses is the same.    They should accept that which they believe to be true, and reject that which they believe to be false.

3.    Murder of the first and second degree, manslaughter, and malice defined.

4.    The law applicable to self-defense, stated.

*(November* 13, 1908.)

LORE, C. J., and SPRUANCE and BOYCE, J. J., sitting.

*Robert H. Richards*, Attorney-General, and *Daniel O. Hastings*, Deputy Attorney-General, for the State.

*David J. Reinhardt* and *William G. Jones, Jr.* for the prisoner.

At a Court of Oyer and Terminer, for New Castle County, beginning the twelfth day of November, 1908, Elwood Wiggins, the prisoner, was placed on trial upon an indictment charging MURDER OF THE FIRST DEGREE.

At the trial, the prisoner was asked by his counsel the follow-

ing question:—"Do you or not know the general reputation of Edward Denby" (referring to the man whom the prisoner was charged with having murdered) "as to violence in the community in which he lived?" This was objected to by the State, on the ground that the general reputation of the deceased for violence is not in issue.

BOYCE, J.:—The argument of counsel upon the question now before the Court was interesting and very helpful.

The prisoner admits that he shot the deceased, but he insists that he did it in self-defense.

The State, in support of the objection made to the admissibility of the testimony now offered, urged that the general reputation of the deceased for violence is not in issue, and relied chiefly on a previous ruling of this Court in the case of *State vs. Thawley*, decided at the April Term, 1845, in Kent County. Chief Justice Booth, speaking for the Court in that case (Harrington, J., being dubitante), said in part: "The testimony offered is the general character of the deceased as a violent man. From the fact that we cannot find any case in the books, where this evidence has been admitted, nor any principle which would admit it, we feel constrained to reject the evidence." 4 *Harr.*, 526.

So far as we are advised, that ruling has not been questioned or departed from by this Court since its announcement. The Attorney-General conceded that, in nearly all of the State Courts as well as in the Supreme Court of the United States, the rule was, contrary to our own decision, to admit the general reputation of the deceased for violence, if known to the accused, after evidence has been introduced, intended to establish the fact of an actual assault upon the accused. But he suggested that this Court might hesitate to depart from its previous decision.

In the case of *Smith vs. United States*, 161 *U. S.* 88, Mr. Justice Gray said: "The main question in controversy at the

trial was whether the killing of W. by the defendant was in self defense.  Upon that question any evidence, which, according to the common experience of mankind, tended to show that the defendant had reasonable cause to apprehend great bodily harm from the conduct of the deceased towards him just before the killing, was admissible; and upon principle, and by the weight of authority, evidence that the deceased was a larger and more. powerful man than the defendant, as well .as evidence that the deceased had the general reputation of being a quarrelsome and dangerous person, was competent, especially if his character in this respect was known to the defendant, which there was evidence in this case tending to show."  And in the case of *Upthegrove vs. The State*, 37 *Ohio State*, 662, it was said:  "As a general rule, in trials for homicide or felonious assault the character of the person assaulted or killed cannot be shown; for the reason that the law holds it to be as criminal to assault a bad and violent man as a good and peaceable one.  But to this rule there is an exception in cases where the plea is self-defense and there is evidence tending to show that the actual or attempted killing took place while the accused was being actually assaulted. * * * The rule allowing evidence of character or general reputation in such cases, brought home to the knowledge of the prisoner, is founded on the clearest principles of reason, and is amply sustained by authority."

Reluctant as we, always, are to depart from a former decision of this Court, we are constrained, in view of the great weight of authority and the sound principle of evidence opposed to the ruling in *State vs. Thawley*, to disregard that ruling and admit the evidence now offered, it being relevant and material to the issue raised by the plea of self-defense, and proper to be considered by the jury, if they should find from the evidence that an actual assault was first made by the deceased upon the prisoner, in determining whether the prisoner was, at the time of the shooting, in reasonable fear of death or great bodily harm.

The objection to the question now before the Court, is over-ruled.

Boyce, J., charging the jury:

Gentlemen of the jury:—Elwood Wiggins, the prisoner, is charged in the indictment with murder of the first degree.

It is charged that the prisoner shot William Edward Denby with a pistol, in the left side, on or about the twenty-third day of July, A. D. 1907, at or near Brady's Woods, near Middletown, this County, and that Denby died in consequence of the shot wound, on or about the first day of August following.

The prisoner admits the shooting of Denby as charged, and the death of the latter as the result is not denied.

The prisoner insists that he did the shooting in necessary self-defense.

Homicide is the killing of one human being by another. Felonious homicide is of three kinds: murder of the first degree, murder of the second degree and manslaughter. Malice is an essential ingredient of the crime of murder of both degrees. Without malice there can be no murder either of the first or of the second degree. Malice is a condition of the mind or heart. As here used this term is not restricted to spite or malevolence toward the particular person slain, but also includes that general malignity and reckless disregard of human life which proceed from a heart void of a just sense of social duty and fatally bent on mischief. Wherever the fatal act is done deliberately or without adequate cause, the law presumes that it was done with malice, and the burden is on the prisoner to show from the evidence or by inference from the circumstances of the case, that the act was not done with malice.

Murder of the first degree is where the killing was done with express malice aforethought, or in perpetrating or attempting to perpetrate a crime punishable with death. Express malice aforethought is where one person kills another with a sedate, deliberate mind and formed design, which formed design may be manifested in many ways; as, for instance, by lying in wait for the deceased, or by antecedent menaces or threats that disclose

a purpose on the part of the prisoner to commit the act charged, or by a former grudge, ill-will, spite, hatred, or malevolence towards the deceased, or any other circumstances which disclose the purpose or intention of the accused toward his victim at the time when the crime was committed. The deliberate selection and use of a deadly weapon is a circumstance which, in the absence of satisfactory evidence to the contrary, indicates the existence in the mind of the person committing the act of a deliberate formed design to kill. All homicides with a deadly weapon are presumed to be malicious until the contrary appears by the evidence, and the burden of proof to the contrary lies on the accused. Where the killing by a deadly weapon is admitted or proved, malice aforethought is presumed, in the absence of evidence to the contrary, and the burden of showing the contrary is on the accused, as the natural and probable consequences of the act are presumed by law to have been intended by the person in using a deadly weapon. If the jury are satisfied from the evidence that the prisoner, when he killed the deceased, deliberately intended so to do, the length of time that said intention existed is immaterial, and the killing under such circumstances would be murder.

Murder in the second degree is where the killing was done with implied malice. Implied malice is an inference or conclusion of law from the facts found by the jury. Murder of the second degree is where there was no deliberate mind or formed design to take life or to perpetrate a crime punishable with death, but where the killing was done without justification or excuse and without provocation, or without sufficient provocation to reduce the offense to manslaughter.

Manslaughter is where one person unlawfully kills another without malice. In order to reduce the crime to manslaughter, the provocation must be very great—so great as to produce such a transport of passion as to render the person for the time being deaf to the voice of reason. While murder proceeds from a wicked and depraved sprit and is characterized by malice, man_

slaughter results from no malignity, but from unpremeditated and unreflecting passion.

No looks or gestures, however insulting, no words, however opprobrious or offensive, can amount to a provocation sufficient to excuse or justify even a slight assault. Nor can a slight assault excuse the killing of an assailant with a deadly weapon, so as to reduce the offense from the grade of murder to that of manslaughter.

*State vs. Powell, 5 Pennewill 24 (at 37-39).*

As has been said, the prisoner admits firing the fatal shot, but seeks to justify it on the ground that he was at the time of the shooting in danger of death or great bodily harm. In other words, he relies upon necessary self-defense. The burden of establishing such a defense to the satisfaction of the jury rests upon the prisoner. The law is that in repelling or resisting an assault, no more force may be used than is necessary for the purpose, and if the person assailed use in his defense greater force than is necessary for that purpose, he becomes the aggressor. If a person is assailed in such a manner as to create in the mind of a reasonable person a belief that he is in danger of death or great bodily harm, it is his duty to retreat, if he can safely do so, or to use such other reasonable means as may be within his power to avoid killing his assailant. No one may take the life of another, even in the exercise of the right of self-defense, unless there is no other available means of escape from death or great bodily harm.

If you are satisfied from the evidence that the deceased first attacked the prisoner, and that from the character of such attack, the prisoner had reasonable cause to believe, and did believe, at the time of the shooting, that he was in imminent danger of death or great bodily harm, and that he had no other reasonable means of avoiding or preventing death or great bodily harm, then the killing of the deceased was a justifiable act of self-defense, and the prisoner should be acquitted of any crime whatever.

If you find from the evidence that the deceased did first attack the prisoner and that in addition thereto he had a general reputation for ferocity and violence, known to the prisoner, at

the time of the shooting, then such a reputation of the deceased is a proper subject for your consideration in connection with the character of the attack, in determining whether, or not, the deceased, by his acts, created in the mind of the prisoner, at the time of the shooting, a reasonable belief that he was in danger of death or great bodily harm. Neither the mere fact that an attack was made upon the prisoner by the deceased, nor the fact that the deceased was a man of general bad reputation for violence, known to the prisoner, or both, would justify the shooting of the deceased, unless the prisoner had reasonable cause to believe and did believe, at the time of the shooting, that he was in imminent danger of death or great bodily harm, and that he had no other reasonable means of avoiding or preventing death or great bodily harm.

A free and voluntary confession is generally deserving of the highest credit, because it is against the interest of the person making it, and is presumed to flow from a sense of guilt. The whole of what the prisoner said on the subject, at the time of making the confession, should be taken together and considered by the jury; but all parts of a confession, whether for or against the prisoner, are not necessarily entitled to equal credit. The prosecution is at liberty to deny or contradict any part of it. In determining the credit to be given to a confession, the jury may reject, as not entitled to belief, such parts of it as are contradictory to other parts of it, or in conflict with facts otherwise proved to the satisfaction of the jury. The jury may believe that part of the confession which charges the prisoner, and reject that which is in his favor, if, under all the circumstances of the case, they find sufficient grounds for so doing. The duty of the jury in respect to the confessions of the prisoner and in respect to his own testimony and the testimony of the other witnesses is precisely the same. They should believe so much of such confessions and testimony as they deem true and worthy of belief, and reject so much of the same as they deem false and unworthy of belief.

You are the judges of the weight of the testimony and the credibility of the witnesses. Where, as in this case, the testimony is

conflicting, you should reconcile it if you can, but if you cannot do so, you should accept that part of it which in view of all the testimony and surrounding circumstances of the case, you deem worthy of credit, and reject that part which you deem unworthy of credit, having due regard to the apparent intelligence or ignorance of the witnesses, their manner of testifying, their impartiality or bias, if any, and their opportunity of knowing the facts to which they have testified.

Your duty is to determine from the evidence, adduced before you, considered in connection with the instructions of the Court, whether the prisoner is guilty of any, and, if any, of what offense, such as you may find under this indictment, and there your duty ends.   In the discharge of this duty you should not be moved by any considerations of the punishment which may follow a conviction.

In every criminal case the accused is presumed to be innocent until his guilt, including every essential element necessary to constitute the crime charged, is proved to the satisfaction of the jury beyond a reasonable doubt.

Verdict, guilty of murder of the second degree.