## SMITH *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF ARKANSAS.

No. 608. Argued November 19, 1895. — Decided March 2, 1896.

Upon a trial for murder, where the question is whether the killing was in self-defence, evidence that the deceased was a larger and more powerful man than the defendant, as well as evidence that the deceased had the general reputation of being a quarrelsome and dangerous man, is competent evidence for the defendant.

Upon the question whether a homicide was committed in self-defence, witnesses called by the defendant testified that the deceased had the general reputation of being a man of a quarrelsome and dangerous character; and being asked on cross-examination whether they had ever been arrested for anything, it appeared that one of them had been arrested, convicted and imprisoned for selling whiskey, and others had been arrested, but not convicted, for various offences. The judge instructed the jury that reputation was the reflection of character, and, in order to be entitled to consideration, must come from a pure source, and be the reflection of honest and conscientious men, who have character themselves; that, if a man is without character himself, his action characterized by crime, his conscience seared by criminal conduct, he is incompetent to know what character is; and that if it was the reflection of keepers of gambling hells, and violators of law, and prison convicts, the jury should cast it aside as so much worthless matter. *Held,* that the defendant, having excepted to this instruction, and been convicted of murder, was entitled to a new trial.

This was an indictment in the Circuit Court of the United States for the Western District of Arkansas for the murder, at the Cherokee Nation in the Indian Country, on September 27, 1894, of John Welch, a negro and not an Indian, by shooting him with a pistol.

At the trial, the government introduced evidence tending
to show that Welch and the defendant, about noon, at a fair
ground in Muscogee, at a spot close by their respective tents,
and near a merry-go-round, a dance hall, gambling places, re-
freshment booths, and other tents and buildings, and in the
presence of a crowd of people, fell into dispute; that the
defendant ran into his tent, and finding one Scott Gentry
inside, snatched Gentry's pistol from his belt, came out, and
shot and killed Welch; and that Welch was unarmed at the
time.

The defendant admitted the killing, and contended that he
did it in self-defence; and, being called as a witness in his
own behalf, testified that he knew Welch, "was very nearly
raised up with him," and they had "tussled together all the
way up from boys;" that Welch was a bigger and much
stronger man than himself; that he knew that Welch had
a pistol the night before; and that, when he shot Welch,
Welch was advancing, with his right hand at his hip pocket,
towards the defendant, and threatening to kill him.

The defendant also called witnesses, who testified that the
deceased had previously made threats against the defendant's
life; and five other witnesses, living at Muscogee, who testi-
fied that they had known Welch for years, and that he had
the general reputation of being a man of quarrelsome and
dangerous character.

Each of these five witnesses was asked by the district
attorney, on cross-examination, whether he had ever been
arrested for anything. In answer to this question, one of
them testified that he had been arrested, tried and acquitted
for murder; and had been arrested for gambling, and dis-
charged. A second witness testified that he had been ar-
rested for "fighting and gambling" only. A third witness
testified that he had once been arrested, three or four years
before, and brought to Fort Smith, for selling whiskey; and,
on reëxamination, that the grand jury ignored the charge,
and that he had never been convicted of anything. A fourth
witness testified that he had been arrested for "fighting and
whiskey," but for nothing else, and had twice "served a jail

sentence for whiskey." The fifth witness testified that he had never been arrested for anything; and there was no other evidence of the arrest or conviction of any of these witnesses, or that any of them had anything to do with keeping a gambling place.

The court, in the charge to the jury, instructed them as to the evidence of the character of the deceased as follows: "Now, what is reputation? It is the reflection of character. Character is the thing itself. It is that which a man makes day after day, and hour after hour, and year after year, by his bearing and conduct in the community where he lives. If that thing is reflected by the words spoken by men of credit, by men of standing, by men of pure character standing before you, that such reputation is so reflected as that you can believe it, of course it is entitled to consideration and to be taken in the case if it is applicable. But it is to come from men who are morally and mentally competent to know what it means. If a man is without character himself, if his action has been characterized by crime, if his conscience has been seared by criminal conduct, he is thus rendered incompetent to know what character is. He has none himself, and he is incompetent to determine when other men have one. And above all is it necessary, important, and essential to the interests of public justice, that justice should not be defeated by men of that character scraped from the four corners of the earth. You are to see to it that it comes from a pure source; and then, again, you are to see to it that it is the reflection, not by keepers of dives and gambling hells, and violators of law, and prison convicts, but it is the reflection of honest and conscientious men, of men who possess character themselves; men of integrity; men whose judgments make up in your community your character that you prize so highly, because it is the opinion of honest, intelligent, judicious and just men and women in your community. That is the source that character is to come from, and the only source from which you can derive it in a reliable way. If it does not come from that source, but comes from the source I have designated, cast it aside as so much worthless

matter invoked wrongfully in cases of this character." To this instruction the defendant at the time excepted; and, after being convicted and sentenced for murder, sued out this writ of error.

*Mr. William M. Cravens* for plaintiff in error. *Mr. C. J. Frederick* was on his brief.

*Mr. Assistant Attorney General Whitney* for defendant in error.

Mr. Justice Gray, after stating the case, delivered the opinion of the court.

The main question in controversy at the trial was whether the killing of Welch by the defendant was in self-defence. Upon that question any evidence, which, according to the common experience of mankind, tended to show that the defendant had reasonable cause to apprehend great bodily harm from the conduct of the deceased towards him just before the killing, was admissible; and upon principle, and by the weight of authority, evidence that the deceased was a larger and more powerful man than the defendant, as well as evidence that the deceased had the general reputation of being a quarrelsome and dangerous person, was competent, especially if his character in this respect was known to the defendant, which there was evidence in this case tending to show. *Wiggin* v. *People*, 93 U. S. 465; *Allison* v. *United States*, 160 U. S. 203, 215; *State* v. *Benham*, 23 Iowa, 154; *Commonwealth* v. *Barnacle*, 134 Mass. 215; *Hurd* v. *People*, 25 Michigan, 405; *State* v. *Bryant*, 55 Missouri, 75; *Marts* v. *State*, 26 Ohio St. 162; *State* v. *Nett*, 50 Wisconsin, 524; *State* v. *Turpin*, 77 No. Car. 473; Wharton on Homicide, (2d ed.) §§ 606–623, and cases cited. In *Wiggin* v. *People*, above referred to, evidence that "the deceased's general character was bad, and that he was a dangerous, violent, vindictive and brutal man," was admitted at the trial; and was assumed to be competent, both in the opinion of this court delivered by

Mr. Justice Miller, and in the dissenting opinion of Mr. Justice Clifford. 93 U. S. 466, 470, 474.

The testimony introduced by the defendant to the character of the deceased was therefore competent and material.

All that was shown, by way of impeaching the credibility of any of the five witnesses who testified to this point, was that one of them had been arrested, tried and acquitted for murder, and had been arrested for gambling, and discharged; another had been arrested for fighting and gambling; another arrested for fighting and for selling whiskey; and another arrested, convicted and imprisoned for selling whiskey. There was no evidence that any of the witnesses, except this one, had been convicted of any offence whatever, or that any one of the five had anything to do with keeping a gambling place.

Yet the court, in instructing the jury as to the weight to be given to the evidence of the character of the deceased, told them that reputation was the reflection of character, and, in order to be entitled to consideration, must "come from a pure source," and be "the reflection of honest and conscientious men, of men who possess character themselves, men of integrity, men whose judgments make up in your community your character that you prize so highly, because it is the opinion of honest, intelligent, judicious and just men and women in your community;" and that "if a man is without character himself, if his action has been characterized by crime, if his conscience has been seared by criminal conduct, he is thus rendered incompetent to know what character is; he has none himself, and he is incompetent to determine when other men have one;" and charged the jury "to see to it that it is the reflection not by keepers of dives and gambling hells, and violators of law, and prison convicts," and, if it comes from that source, to "cast it aside as so much worthless matter invoked wrongfully in cases of this character."

This heaping up of injurious epithets upon the witnesses, coupled with the injunction (which could have no application to anything before the court except their testimony) to "cast it aside as so much worthless matter invoked wrongfully," could not have been understood by the jury otherwise than as

a command to disregard all the testimony introduced in behalf of the defendant, bearing upon the character of the deceased as a quarrelsome and dangerous man.

The character of a quarrelsome and dangerous man is not always so well known to peaceable and law-abiding citizens, that their testimony upon the subject can be had. In this, as in other matters involved in the administration of the criminal law, it is often necessary to resort to those who are more familiar with the persons between whom, and the places in which, quarrels and affrays are apt to take place.

No doubt has been suggested as to the competency of any of the witnesses in question; and their credibility was a matter to be determined by the jury. The judge having, in effect, peremptorily withdrawn this matter from their consideration, the defendant is entitled to a new trial. *Hicks* v. *United States*, 150 U. S. 442; *Starr* v. *United States*, 153 U. S. 614; *Allison* v. *United States*, 160 U. S. 203.

It is, to say the least, doubtful whether evidence of an arrest only, not followed by a conviction, is competent to affect the credibility of a witness. *Ryan* v. *People*, 79 N. Y. 593; *Van Bokkelen* v. *Berdell*, 130 N. Y. 141. But such evidence having been admitted without objection as to these witnesses, and having been previously introduced by the defendant's counsel in cross-examining the witnesses for the government, the expression of a decisive opinion upon it would be out of place.

It becomes unnecessary to consider the other exceptions to the rulings and instructions of the court.

*Judgment reversed, and case remanded with directions to set aside the verdict and to order a new trial.*