244 P.2d 131

STATE v. BROCK.

No. 5479.

Supreme Court of New Mexico.
April 22, 1952.

Rehearing Denied May 29, 1952.

O. O. Askren, G. T. Watts, Roswell, for appellant.

Joe L. Martinez, Atty. Gen., W. F. Kitts, Asst. Atty. Gen., for appellee.

McGHEE, Justice.

The sole ground relied upon by the appellant to secure a reversal of his conviction of murder in the second degree is the trial court erred in admitting testimony that the deceased Waters bore a good reputation for being a peaceable and quiet man.

Waters and the defendant were good friends until a short time before the killing. Waters had made a contract with the defendant to help him build a house a short time previously and after its completion they lived together until a misunderstanding arose as to the settlement for the work and loans made to Waters. Some two or three weeks before the homicide Waters moved out of the house and left the defendant living there alone, but giving Waters credit on the indebtedness of $50 per month for rent. The defendant admitted the killing and claimed it was done in self defense.

While on the witness stand the defendant testified that on October 5, 1951, Waters came to the house while the defendant was eating supper and stated he had ordered a new 30.06 rifle but he had only $25 to apply towards its purchase price, and asked for a loan of the balance. The defendant says he answered, in effect, "You already had three good rifles when we were on the bear hunt and you do not need another"; then, according to the defendant, Waters "raised up and was crying, and he just made the statement if I did not get out of there he would throw me out or blow me out." The defendant stated he could see from Waters' eyes that he had just gone wild and it scared him. He further testified Waters returned to the house about 1:00 A. M. the night of October 7, 1951, and aroused him from his sleep by knocking on the door and when asked who was there, Waters answered "and he was crying

and said if I did not get out he would run me out or blow me out"; that Waters returned to the home on the night of October 13, 1951, and made the same statement; that he could tell from the way Waters talked he was not the same man he had known theretofore. The defendant testified he did not go to the door at the time of either of these later night visits because of his fear of harm at the hands of Waters. He testified Waters returned the night of October 19 following and asked that he go out to the truck where they could talk matters over; the defendant says he consented and when Waters reached the truck he opened its door, got in the seat, reached above his head and started drawing a rifle from a scabbard; that he, the defendant, grabbed another gun from the truck; that Waters attempted to shoot him but he, the defendant, started shooting first, and that he killed Waters, firing three shots in all.

The state called three witnesses in rebuttal who testified over the objections of the defendant that the general reputation of the deceased for being a peaceable and quiet man was good.

This court first had before it the question of the admissibility of such testimony by the state in rebuttal in State v. Johnson, 24 N. M. 11, 172 P. 189, where the defendant had been convicted of murder in the second degree. The wife of the defendant testified the deceased insulted her in the home of herself and husband at a late hour in the evening when the defendant was absent. She also testified concerning a conversation she had overheard between her sister and another woman to the effect the deceased had on a former occasion run her away from her home. There, as in this case, counsel agreed the good character of the deceased was not a proper subject of proof in a prosecution against another for killing him, where his character had not been attacked by the defense. It was held the testimony of the wife above detailed made admissible evidence on behalf of the state to prove the deceased had a good reputation for morality and decency.

In State v. Bailey, 27 N.M. 145, 198 P. 529, it was held unsuccessful efforts on the part of the defendant on cross examination to elicit facts which would show the deceased was a quarrelsome and violent man made evidence of his good character in that respect admissible.

It was next before us in State v. Todd, 28 N.M. 518, 214 P. 899. In rebuttal the state introduced evidence of the good reputation of the deceased as to peace and quietude. We quote therefrom as follows:

"* * * It appears from the transcript that a large amount of testimony was produced by the defendant which showed the violent character of the deceased. The appellant himself testified that the deceased was a high-tempered man, and had told defendant that if he

did not quit meddling with deceased's business he would blow his brains out; that deceased had his gun with him at the time; that later the deceased in the nighttime attempted to murder the appellant and his whole family by the use of chloroform; that deceased on another occasion laid in wait for appellant and had told him that he was going to kill him; that he habitually carried a gun when he came around the place where appellant lived, and that he had never theretofore carried a gun so far as appellant knew; that appellant moved away from the place where he was living with his family in order to avoid trouble with the deceased. The wife of the defendant testified that the deceased was quick-tempered, and that he was the cause of all the trouble with her husband; that the deceased threatened the appellant to her, and said he was going to kill him; that she and her husband moved away from their home to another place because she saw there was trouble and that they thought it best to get away; that the deceased had tried to chloroform her along with her husband. The little son of appellant testified to seeing his uncle, the deceased, around his father's place on several occasions with a shotgun, and that on one occasion the deceased made a threat against the appellant. Other testimony of a simi-lar import is to be found in the record, and was introduced for the purpose of demonstrating that the deceased was a dangerous and violent man, and for the purpose of demonstrating that the appellant, when he fired the fatal shot, was justified in taking the same into consideration in determining whether it was necessary for him to kill. This proof clearly put in issue the character of the deceased as a man of peace and quietude, or as a man of violent and dangerous character."

After a review of the cases from various jurisdictions dealing with the question, it was stated under the circumstances there could be no doubt that the prosecution had the right on rebuttal to prove the character of the deceased as a man of peace and quietude.

The defendant places considerable reliance upon the cases of State v. Bolhofner, 336 Mo. 1155, 82 S.W.2d 894, and De Woody v. State, 21 Ariz. 613, 193 P. 299, in his effort to secure a reversal here. The Bolhofner case leans heavily upon the De Woody case for its holding that testimony of the defendant and his son as to statements of the deceased made over the telephone in an angry manner shortly before the killing, and as to what transpired immediately before and at the time of the killing did not warrant the introduction of testimony showing the good reputation of the deceased.

The De Woody case holds that the detailing by the defendant of previous quarrels between him and the deceased in which the latter made violent threats against the defendant did not warrant the state in showing the good reputation of the deceased in rebuttal. That case, however, as authority for the question here is greatly weakened by the later decision in Burnett v. State, 34 Ariz. 129, 268 P. 611, wherein it is pointed out that in that case the state had brought out the details of these quarrels in its case in chief in an effort to discredit the defendant, and that such evidence on the point as the defendant brought out was on cross examination of the state's witnesses on the subject. In the Burnett case [34 Ariz. 129, 268 P. 614] the court quoted from the De Woody opinion, italicizing a part thereof. We quote therefrom the following:

" 'It is to be observed, however, that when the defense in a prosecution for homicide puts the character of the deceased as a quarrelsome, turbulent or violent and dangerous man in issue, the state may support it by proofs that the deceased was a peaceable, quiet, and law-abiding man. Wharton on Homicide (3d Ed.) par. 269. Furthermore, the attack on the character of the deceased need not be direct as to his general reputation to render admissible evidence of his good character on the part of the state. *It is immaterial in what manner the attack is made, whether by evidence of general reputation or by any other species of evidence. If the issue is raised by the defense at all, the state may meet it by evidence of general reputation as to good character.* Wharton on Homicide, 3d Ed., par. 270; People v. Gallagher, 174 N.Y. 505, 66 N.E. 1113, affirming 75 App. Div. 39, 78 N.Y.S. 5. No general rule can be laid down for the determination of what will be held to constitute an attack by the defendant on the character of the deceased so as to "open the door" for rebuttal on behalf of the state, but each case must be decided according to its own circumstances or facts. 13 R.C.L., par. 219, p. 917; Kelly v. People, supra. [229 Ill. 81, 82 N.E. 198, 12 L.R.A.,N.S., 1169].' (Italics ours.)"

The facts are not detailed in the Burnett case, but we quote paragraph 6 thereof as follows:

"It is the contention of the state that in the case at bar the defendant did make the character of deceased for peace and quietude one of the issues. The homicide itself was admitted, but justification on the ground of self-defense was the defense and defendant submitted testimony which, if believed by the jury would naturally cause them to think deceased was a violent and dangerous man whom defend-

ant might justly fear. We are of the opinion that this evidence offered by the defense put the character of deceased sufficiently in issue so that the state was entitled to show his general reputation for peace and quietude."

The latest case on the subject which has come to our attention is State v. Rutledge, Iowa, 47 N.W.2d 251, in which it is held where the defendant had introduced evidence of various telephone calls to him over a period of several months in which the deceased had abused the defendant, cursed, vilified and threatened to beat him, such evidence constituted an attack upon the deceased's character sufficient to authorize the state to meet it by evidence of his good character as a quiet and peaceable citizen.

We believe the difference in the testimony introduced in the Todd case, supra, and in this one reflecting on the good character of the deceased is only one of degree. True, there was more testimony to show the deceased was a dangerous and violent man in the Todd case than we have here, but even if we consider the first threat of the deceased as having been made in a fit of temper because of the defendant's refusal to make him a loan, we have two other occasions when the deceased, according to the defendant, came to his home in the nighttime, pounding on the door and making direct threats to "throw him out or blow him out" if he did not vacate the premises. We hold such testimony on the part of the defendant made proof admissible of the deceased's good reputation for being a peaceable and quiet man.

The judgment will be affirmed.

It is so ordered.

LUJAN, C. J., and SADLER, COMPTON, and COORS, JJ., concur.