**Mattie M. EVANS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 15389.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 22, 1959.

Decided March 31, 1960.

Mr. Henry Kaiser, with whom Mr. Stephen Schlossberg, Washington, D. C. (both appointed by this Court), was on the brief for appellant.

Mr. Louis M. Kaplan, Asst. U. S. Atty., at the time of oral argument, with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Before EDGERTON, BAZELON and FAHY, Circuit Judges.

*BAZELON, Circuit Judge.*

Appellant was convicted of second-degree murder. The homicide occurred on the sidewalk of a street in Washington about 5:30 a. m., on May 1, 1955.[1] The

---

1. Following a trial, the District Court entered judgment on January 18, 1956 and

sentenced appellant to a prison term of five to twenty years. On January 23,

Government called three disinterested eyewitnesses, none of whom observed all the events surrounding the homicide. When pieced together, however, their testimony showed that appellant was in the company of two other women and a man; that they hailed the deceased, who was walking on the other side of the street, and he joined the group; and that a few moments later, tussling and fighting began in the group, in the course of which appellant inflicted mortal wounds with a knife. There was also strong evidence that the deceased was drunk. The Government advanced no motive for the killing and none appears. Since appellant and the deceased were total strangers and money on his person was undisturbed, there is no basis for imputing a personal or a robbery motive.

Appellant took the stand and testified that she killed the deceased in defending herself from a sexual assault. She said that she was returning home alone; that the decedent came up from behind and asked whether she was "out for some sporting"; that when she rebuffed this and other obscenities, he grabbed her, ripping some of her clothing. Appellant admitted that in the course of the ensuing struggle she stabbed the decedent with a knife which she carried for protection.

Able counsel appointed by this court urge only one ground for reversal. It is that the trial court erred in rejecting the defendant's proffer of testimony by the deceased's wife that he

"was ill mentally, not insane * * * a lost soul who wanted to be with people, get along with the rest, and did not know how to do it; that at times, that he would like to drink and at times on drinking and otherwise he would even go to the extent of being psychotic, perhaps, and with her at least she would know— acted belligerent and in a really bellicose type of manner."

▮ Appellant's counsel contend that upon a plea of self-defense, evidence of the deceased's "character and belligerency," though unknown to the defendant, is admissible in corroboration of the defendant's testimony that the deceased was the aggressor. They say this is but a logical extension of the rule of Griffin v. United States, 1950, 87 U.S. App.D.C. 172, 174, 183 F.2d 990, 992, that "evidence of uncommunicated threats of the deceased against the defendant is admissible." [2] We agree

1956, appellant, through her court-appointed trial counsel, made timely application to the District Court for leave to appeal in *forma pauperis*. This application was denied, and on January 27, 1956, appellant, through the same counsel, renewed her application in this court. (Misc. No. 619). By order dated February 27, 1956, we denied the petition "without prejudice to renewal upon a more adequate showing." The petition was not renewed and on June 14, 1956, we dismissed the appeal for failure to comply with the procedural rules.

On April 15, 1959, appellant resubmitted an application to this court for leave to appeal in *forma pauperis*. She stated that after she filled out her appeal papers she neither saw nor heard from her attorney again. It appears that he resigned from the District of Columbia Bar on June 11, 1959, following his conviction for embezzlement of a client's funds. He was subsequently disbarred from practice before this court.

No application for bail was ever made, quite apparently because appellant was without funds or friends. Thus she has been imprisoned for over four years since her conviction for second degree murder, notwithstanding her meritorious appeal. On September 16, 1959, we allowed her to proceed on appeal in forma pauperis, and appointed present counsel to assist her.

2. Marshall v. United States, 1916, 45 App. D.C. 373, 383, recognizes the rule that specific acts of violence as well as the general reputation of the deceased for cruelty and violence are admissible in support of the theory of self-defense. Id. at page 383. Although these traits were known to the accused in that case, the court articulated no such limitation upon their admissibility.

The rule urged by counsel, which we adopt, has been approved by the Supreme Court, Smith v. United States, 1896, 161 U.S. 85, 16 S.Ct. 483, 40 L.Ed. 626 and

The reasons for our view are well summarized by Professor Wigmore:

> "When the issue of self-defense is made in a trial for homicide, and thus a controversy arises *whether the deceased was the aggressor,* one's persuasion will be more or less affected by the character of the deceased; it may throw much light on the probabilities of the deceased's action: [footnote omitted]

> \* \* \* \* \* \*

> "[The] additional element of communication is unnecessary; for the question is what the deceased probably did, not what the defendant probably thought the deceased was going to do. The inquiry is one of *objective occurrence,* not of subjective belief." I Wigmore, Evidence § 63, at 467, 470–471 (3d ed. 1940). See also 2 id. § 246, at 54.

■ Although the proffer in this case was inartful, we think that, at the very least, it adequately apprised the trial judge that the evidence would show that the deceased was aggressive when drunk. Since it is clear that the deceased was drunk, such testimony was relevant in corroborating appellant's contention that she was attacked. Moreover, the proffer, broadly construed, purported to explain the deceased's general character and reputation. We think that, in the circumstances of this case, almost any evidence showing what kind of man the decedent was would be highly relevant in helping the jury to determine whether appellant's story of a sexual assault was truthful, and would therefore serve the interests of justice.

by a great many state courts, see, e. g., People v. Cellura, 1939, 288 Mich. 54, 284 N.W. 643, 647; Randolph v. Commonwealth, 1949, 190 Va. 256, 56 S.E. 2d 226, 230; and cases collected in Annotation 64 A.L.R. 1029 (1929); Wigmore, supra; 26 Am.Jur. Homicide §§ 344, 346 (1940).

We cannot say that the error in excluding this testimony was harmless. It is true that three disinterested prosecution witnesses testified that appellant was not alone at the time of the incident, and that this adversely affected her credibility. But none of the Government's witnesses could say who instigated the fight.[3] Consequently even if the jury believed all that the Government's witnesses said, it still could have found that appellant acted in self-defense if it believed her uncontradicted statement that the deceased was the aggressor. We think the proffered evidence might have led the jury to believe that statement, notwithstanding its apparent doubts as to appellant's credibility on other phases of her testimony.

■ Finally, but equally important, even if it convincingly appeared that the excluded testimony could not induce the jury to acquit, evidence suggesting that he was the aggressor might well have induced the jury to convict appellant for the lesser included offense of manslaughter, instead of second-degree murder.

Reversed and remanded.

FAHY, Circuit Judge (dissenting).

The defense offered was the need to kill deceased in resisting a sexual assault. In my view the proffered testimony was too tenuous in corroborative relationship to this particular defense to justify reversal because of rejection of the proffer, especially when all the evidence as to the manner in which the homicide occurred is considered. It follows from this view that I attach no significance to the circumstance that the jury could convict of manslaughter.

3. The only eyewitness to the actual encounter testified that he was not paying much attention because he thought all the participants were drunk, and that he could not see too well as the fight occurred across the street behind a row of parked cars. All he saw were three women and two men "all mingling up there together, [and it] looked like they was fighting."