561 P.2d 482

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Leroy BAZAN, Defendant-Appellant.**

No. 2599.

Court of Appeals of New Mexico.

Jan. 25, 1977.

Certiorari Granted then Quashed
March 17, 1977.

Farrell L. Lines, Lamb, Metzgar, Franklin & Lines, P. A., Albuquerque, for defendant-appellant.

Toney Anaya, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

There was a car chase with shooting. Involved were defendant, Madrid and Sheriff's Officer Foster. Defendant appeals his conviction of assault with intent to commit a violent felony. Section 40A-3-3, N.M.S.A.1953 (2d Repl. Vol. 6). The issues raised divide into two categories: (1) writing used to refresh memory, and (2) character evidence.

*Writing Used to Refresh Memory*

Because the incident in question involved the discharge of a firearm by Foster, the Internal Affairs Division of the Sheriff's Office conducted an investigation. As a part of that investigation, defendant was interviewed. The interview was tape recorded. A transcription was made of the tape; the transcription was included as a part of the Sheriff's Office file.

Officer Stockard conducted the investigation. When subpoenaed to testify, he attempted, unsuccessfully, to locate the tape of the interview with defendant. Prior to any testimony from Stockard, defendant moved to suppress the transcribed statement on various grounds. See *State v. Baca*, 82 N.M. 144, 477 P.2d 320 (Ct.App. 1970). We are not concerned with these grounds because the State did not attempt to introduce the transcription into evidence.

However, the State did inform Stockard that he could refer to the transcription to refresh his memory of the interview. Defendant claims the trial court erred in permitting Stockard to refresh his memory from the transcription. This contention involves past recollection recorded, present recollection revived and Evidence Rule 612.

3 Wigmore, Evidence (Chadbourn rev. 1970) discusses past recollection recorded at §§ 734–755. One of the requirements for use of a recorded recollection as evidence is a showing that the record was correct when made. See §§ 746–747. Wigmore (Chadbourn rev.), supra, discusses present recollection revived at §§ 758–765. Section 758 states:

"It is worth while . . . to note that *none of the limiting rules just examined for past recorded recollection has any bearing on the present subject* [present recollection revived]. The confounding of the two has led to many misguided rulings." (Emphasis in Wigmore.)

Wigmore's distinction between the two rules has been consistent through the years. 1 Wigmore on Evidence, § 747 (1904) discusses the requirement of a showing that the past recollection recorded was accurate when made; §§ 758–764 discusses present recollection revived; § 758 states that *any* writing may be used to stimulate and revive a recollection.

McCormick on Evidence, § 9 (2nd Ed. 1972) agrees that the two rules are different, explaining that when a witness speaks from a memory that has been revived, the testimony is what the witness says and not the writing. However, when memory is not revived, the witness relies upon a writing. In this situation the reliability of the writing must be established. McCormick, supra, also agrees that the two rules have been confused, explaining the confusion by the practice of referring to both rules by the phrase "refreshing recollection".

Although a showing that the writing was correct when made is not a requirement of the rule concerning present recollection revived, McCormick, supra, considers there is

no harm in adding this requirement "if it is a safeguard needed in the search for truth." As to this, McCormick, supra, states:

"[M]ost courts today when faced with the clear distinction between the two uses of the memoranda, will adhere to the 'classical' view that any memorandum or other object may be used as a stimulus to present memory, without restriction by rule as to authorship, guaranty of correctness, or time of making. On balance, it would seem that this liberality of practice is the wiser solution because there are other sufficient safeguards to protect against abuse."

New Mexico decisions have confounded the two rules. The question for this Court is whether we may adopt the "wiser solution" or whether under *Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778 (1973) we must follow the New Mexico decisions. The question arises because there is no evidence that the transcription of the tape was correct when made. If such was required, the trial court erred in allowing Stockard to use the transcription to refresh his memory.

The confounding occurred in two decisions reported in Volume 15 of the New Mexico Reports: *Territory v. Harwood,* 15 N.M. 424, 110 P. 556, 29 L.R.A., (n.s.) 504 (1910) and *Palma & Ruppe v. Weinman & Barnett,* 15 N.M. 68, 103 P. 782, 24 L.R.A., (n.s.) 423 (1909).

An issue in *Harwood* was the age of a girl. A priest testified as to the age, however, he had no recollection of the girl's age or of her christening. His only knowledge of the girl's age was based on a memorandum made about the time of the christening. The priest did not testify that the memorandum was correct when made. This testimony raised an issue only as to past recollection recorded because there was no present memory.

*Harwood* discusses both present recollection revived as well as past recollection recorded and states:

"Whether one or the other of the rules above outlined [concerning past recollection recorded] is followed or whether the memorandum is used simply to stimulate

memory which thereupon becomes awakened thereby, it is an essential at the basis of the use of all memoranda that they shall be shown to have been correct when made."

*State v. Apodaca,* 42 N.M. 544, 82 P.2d 641 (1938) follows this quotation in a case involving past recollection recorded, citing *Harwood* as authority. Accordingly, *Apodaca* does not require separate consideration.

*Harwood* gives four citations in support of the above quotation. They are: Section 747 of the 1904 edition of Wigmore, supra; *Acklen's Executor v. Hickman,* 63 Ala. 494, 35 Am.Rep. 54 (1879); *Imhoff v. Richards,* 48 Neb. 590, 67 N.W. 483 (1896); *Nehrling v. Herold Co.,* 112 Wis. 558, 88 N.W. 614 (1902). All involve past recollection recorded; however, the Alabama and Wisconsin decisions do state that before a writing may be used to refresh one's memory, there must be a showing that the writing was correct when made. Thus, two of the authorities cited confuse the two rules; the other two authorities cited deal only with past recollection recorded.

In *Palma & Ruppe v. Weinman & Barnett,* supra, the witness read a list of items to the jury. The evidentiary question involved past recollection recorded. Yet, the opinion discusses the refreshing of a witness' memory and cites § 758 of the 1904 edition of Wigmore. This section deals with present recollection revived.

The New Mexico decisions involved past recollection recorded; as to this see Evidence Rule 803(5). The decisions did not involve present recollection revived. We do not consider that *Alexander v. Delgado,* supra, requires us to follow the dicta in *Territory v. Harwood,* supra, when that dicta is based on an obvious confusion of two evidentiary rules. Instead, we follow Wigmore, supra, and McCormick, supra. We hold that *Territory v. Harwood,* supra, does not apply to present recollection revived. Compare *Maestas v. Overton,* 87 N.M. 213, 531 P.2d 947 (1975). We also hold there was no error in allowing Stockard to

revive his memory by referring to the transcription without a showing that the transcription was correct when made.

This result is not affected by Evidence Rule 612, the applicable part of which reads:

"If a witness uses a writing to refresh his memory for the purpose of testifying, either—(1) while testifying, or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness."

3 Weinstein's Evidence, ¶ 612[01] (1975) explains:

"The Rule covers but a small portion of the law relating to the refreshing of recollections. A brief survey of some of the features of reviving memory is useful in understanding the rationale of the Rule, even though these aspects will continue to be governed by case law.

"1. No means of arousing recollection may be used until the witness has satisfied the trial judge that he lacks effective present recollection. . . .

"2. Anything may be used to revive a memory—'a song, a scent, a photograph, all allusion, even a past statement known to be false.' Thus, a 'writing' in Rule 612 includes sound recordings and pictures of all kinds. Compare Rule 1001. It does not matter whether a statement is written by the witness himself, was made contemporaneously with the event itself, or is a copy rather than an original. 'The only question is whether in fact it is genuinely calculated to revive the witness' recollection.' . . .

"3. The witness' recollection must be revived after he consults the particular writing or object offered as a stimulus so that his testimony relates to a present recollection. If his recollection is not revived, a memorandum may be read into evidence and admitted if it meets the test of recorded recollection set forth in Rule 803(5). . . .

\*　　\*　　\*　　\*　　\*　　\*

"Two safeguards have been adopted by the courts to temper the possibility of the witness putting before the court inaccurate, though perhaps unconscious, inventions which purport to be his present recollection. The first, which remains a matter of case law, is that the trial judge has considerable discretion at various points to reject the testimony either, as discussed before, by holding that the witness is not lacking in memory, or that the writing does not refresh his memory, or as in the case of leading questions (see Rule 611(c)) by declin[ing] to permit the use of the aid to memory, where he regards the danger of undue suggestion as outweighing the probable value.

"The second safeguard—*which is the subject of Rule 612*—is that an adverse party is entitled to have a writing used for refreshing recollection shown to him for use on cross-examination and exhibition to the jury at his request." (Our emphasis.)

The record shows that defendant had a copy of the transcription and cross-examined Stockard concerning its contents. Defendant did not offer any portion of the transcription into evidence. However, on redirect examination, the State had Stockard read into evidence two questions and answers from the transcription. Defendant claims this was error. We disagree.

The cross-examination brought out that defendant told Stockard that Madrid (a co-defendant tried separately) had fired shots. The defense then asked Stockard to refer to the transcription and suggested that the transcription could be read to the effect that "zero" shots had been fired by Madrid. The two questions and answers read on redirect corrected the suggestion made by the defense.

█ Defendant having attempted to leave with the jury an incorrect impression as to the contents of the transcription, it was proper for the State on redirect to correct that impression by showing the true

content of the transcription on the particular subject. The State did no more than this. Reading of the two questions and answers on redirect was not error. *State v. Lumpkin,* 18 N.M. 480, 138 P. 208 (1914); *Wood v. Dwyer,* 85 N.M. 687, 515 P.2d 1291 (Ct.App.1973) and cases therein cited.

### Character Evidence

Defendant desired to present evidence which went to the character of Foster. Defendant claims the trial court erred in two ways: (1) in excluding evidence that went to Foster's reputation for truth and veracity, and (2) in excluding evidence as to the character of the victim when such character was an essential element of the defense. These contentions involve the interrelationship of Evidence Rules 404, 405, and 608.

Evidence Rule 404 reads:

*"(a) Character evidence generally.* Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

*"(1) Character of accused.* Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

*"(2) Character of victim.* Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

*"(3) Character of witness.* Evidence of the character of a witness, as provided in Rules 607, 608, and 609.

*"(b) Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Evidence Rule 405 reads:

*"(a) Reputation or opinion.* In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

*"(b) Specific instances of conduct.* In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct."

Evidence Rule 608 reads:

*"(a) Opinion and reputation evidence of character.* The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

*"(b) Specific instances of conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

"The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which related only to credibility."

The relationship of these rules is explained in Advisory Committee's Notes to

Proposed Rules of Evidence for United States Courts.

The Advisory Committee's Note to Evidence Rule 404 explains that character questions arise in two different ways. 1. Where character is an element of the crime, claim, or defense there is no question as to relevancy. Character evidence of this type is *not* covered by Evidence Rule 404 and is admissible under Evidence Rule 402 which relates to the admission of relevant evidence. 2. Where character evidence is used to suggest that a person acted consistently with his character, the evidence is circumstantial and problems of relevancy exist. Evidence Rule 404 authorizes the admission of circumstantial character evidence in specified situations. Evidence Rule 404(a)(2) permits the defense to introduce evidence of a pertinent trait of character of Foster *as victim* of the crime for the purpose of showing that Foster acted in conformity with that character trait in defendant's case. Evidence Rule 404(a)(3) permits evidence of Foster's character *as a witness,* as provided in Evidence Rule 608.

■ The preceding paragraph discusses only the authority for admitting character evidence. In this paragraph we discuss the method of proof—the form the evidence must take to be admissible. Character evidence of the first type—where character is an element of the crime, claim, or defense— may be proved by evidence of reputation, opinion evidence, or by specific instances of conduct. Character evidence of the second type—circumstantial character—may be proved only by evidence of reputation or opinion evidence. The offering party (we are not concerned here with cross-examination) may not prove character of the second type by specific instances of conduct. Evidence Rules 404(b), 405(a), and 608, and Advisory Committee's Notes to those Rules; 2 Weinstein's Evidence, ¶ 405[01] (1975); see *De La O v. Bimbo's Restaurant, Inc.,* (Ct.App.), 89 N.M. 800, 558 P.2d 69, decided November 23, 1976.

A variety of contentions were raised in the trial court for the admissibility of the excluded character evidence. In ascertaining the contentions raised, we have reviewed the transcript of defendant's trial and also reviewed the transcript of Madrid's trial (a co-defendant tried separately) because contentions in Madrid's trial were incorporated into the arguments made in defendant's trial. These contentions may be found in the transcript of *State v. Madrid,* Ct.App. No. 2644. We need not consider the contentions in detail; general rules answer the appellate contentions.

■ Reputation or opinion evidence is admissible for both types of character evidence. To the extent defendant is asserting that reputation or opinion evidence was wrongfully excluded, there was no error because the offer of proof was deficient under Evidence Rule 103(a)(2). No questions were asked of a witness concerning any character trait of Foster. Defendant did claim that a certain witness could testify concerning Foster's reputation for aggressiveness and recklessness; however, this claim was a conclusion which failed to reveal the "substance" of the evidence either as to such character traits or Foster's reputation in connection with those traits. *De La O v. Bimbo's Restaurant, Inc.,* supra. The offer of proof as to reputation or opinion evidence being deficient, there was no error in exclusion of this evidence, whether the claim is based on Evidence Rules 404(a), 405(a), or 608.

■ Specific conduct is not admissible evidence to prove character of the second type. To the extent that defendant is asserting that specific conduct was admissible to prove character of the type authorized by Evidence Rule 404(a) there was no error. See Evidence Rules 404(b), 405(a), and 608.

■ Specific conduct is admissible to prove character of the first type. This first type of character is character which is an element of a crime, claim, or defense. Defendant did not claim self-defense nor would the evidence have supported such a claim, if made. Defendant contends that Foster's asserted traits of aggressiveness or recklessness were essential elements of the defense. This contention confuses the two

types of character evidence. We do not attempt to set forth a definition of "essential element" as that term is used in Evidence Rule 405(b). See 2 Weinstein, supra, ¶ 405[04] and ¶ 404[02]; 1 Weinstein's Evidence, ¶ 401[03] (1975). We do hold that absent any claim of self-defense, Foster's asserted character traits were not essential elements of the defense in this case, were not character of the first type and, thus, were not provable by specific acts of conduct. In this case, the asserted character traits were of the second or circumstantial type provable only by reputation or opinion evidence. To the extent defendant is claiming specific conduct was admissible under Evidence Rule 405(b), there was no error.

The judgment and sentence are affirmed. IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.