622 P.2d 1053

**STATE of New Mexico,
Plaintiff-Appellee,**

**v.**

**Ernest Joe MONTOYA,
Defendant-Appellant.**

**No. 3958.**

Court of Appeals of New Mexico.

Jan. 31, 1981.

Writ Quashed Jan. 27, 1981.

Paul Kennedy, Kennedy & Steinmetz, Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Sammy J. Quintana, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Defendant appeals his conviction of voluntary manslaughter. Issues listed in the docketing statement, but not briefed, were abandoned. *State v. Gallegos*, 92 N.M. 336, 587 P.2d 1347 (Ct.App.1978). We (1) answer three issues summarily and (2) discuss the excluded character evidence tendered by defendant.

*Issues Answered Summarily*

(a) The prosecutor filed a nolle prosequi as to the first indictment. Defendant

was then reindicted. Defendant claims the second indictment was invalid because the first indictment was valid. This argument overlooks the fact that after the nolle prosequi, the first indictment was no longer pending. See *State v. Sweat*, 78 N.M. 512, 433 P.2d 229 (Ct.App.1967). Entry of the nolle prosequi was not a bar to the second indictment. *State v. Rhodes*, 77 N.M. 536, 425 P.2d 47 (1967).

■ (b) Defendant contends there was insufficient evidence of voluntary manslaughter to submit that charge to the jury. We disagree; the evidence was sufficient. Compare *State v. Cochran*, 79 N.M. 640, 447 P.2d 520 (1968).

■ (c) Defendant asserts that the prosecutor's closing argument was inflammatory and exceeded fair comment on the evidence, with the result that defendant was denied a fair trial. The prosecutor's comments did not amount to reversible error. See *State v. Smith*, 92 N.M. 533, 591 P.2d 664 (1979). The comments were either within the latitude permitted to attorneys in closing argument or were in response to the argument of counsel for a co-defendant.

### Excluded Character Evidence

Several persons, including defendant, were at the trailer house, outside of which the killing occurred. The victim came to the trailer to "take out" Jeanette, who refused to go with the victim because he had been drinking. The victim departed angrily. The victim returned about an hour later. The men in the trailer went outside and told the victim to leave. The victim spun his car wheels as he left. After another hour, the victim again returned, this time accompanied by a male passenger.

On the victim's third visit, the men from the trailer were again outside urging the victim to leave. A shouting match occurred between the victim and the men from the trailer. The trial court characterized this shouting match as amounting to threats, the use of abusive and foul language, violent argument and challenges to mutual combat.

The men from the trailer were hiding behind things in the yard because Jeanette had told them the victim had a handgun. The men thought they saw a rifle protruding from the victim's car. Rick and defendant were among the men from the trailer; they re-entered the trailer. Rick got his derringer; defendant took it from Rick and went outside. The brief-in-chief states that defendant "hid behind a rock and again pleaded with the deceased and his companion to leave. The occupants of the car responded with more obscenities.... [Defendant] fired what he described as a warning shot into the air. When it failed to move the occupants of the vehicle, he fired another shot." This second shot entered the passenger window and struck the driver, killing him.

There was no rifle in the car; the passenger had a stick. Neither the victim nor the passenger had exited the car or attempted to do so. Defendant fired from a distance of 50-to-70-feet from the car.

Defendant sought to introduce evidence "as to the violent character and specific instances of violent conduct of the deceased." He claims the trial court erred in excluding this evidence.

Defendant did not know the victim or the victim's reputation prior to the shooting. Because of this lack of knowledge, the trial court ruled that the testimony was not admissible to show defendant's fear in connection with the self-defense claim. *State v. Alderette*, 86 N.M. 600, 526 P.2d 194 (Ct. App.1974). The propriety of this specific ruling is not challenged. Defendant claims, in his brief, that this was the only basis on which the trial court excluded the evidence. This claim flagrantly misstates what occurred in the trial court.

Defendant urged admission of the evidence on the basis of Evidence Rules 404 and 405. After extended argument by

counsel, the trial court suggested that defendant tender his evidence by question and answer to avoid any ambiguity as to the evidence sought to be introduced. See Evidence Rule 103(a)(2). This was done. After the tender, the argument as to admissibility continued. Throughout the proceedings the trial court was concerned with the applicability of Evidence Rules 404 and 405, with the relevancy of the tendered evidence, with the fact that the tendered evidence was on a collateral matter, and with the fact that the tendered evidence might be no more than "character assassination." See Evidence Rule 403.

The pertinent portion of Evidence Rule 404 states:

(a) *Character evidence generally.*

Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

\* \* \* \* \* \*

(2) *Character of victim.* Evidence of a pertinent trait of character of the victim of the crime offered by an accused . . . .

■ The trial court properly rejected the prosecutor's contention that character evidence was not admissible under Evidence Rule 404(a)(2) unless the defendant had knowledge of the character involved. Under this rule, evidence of a pertinent trait of character of the victim was admissible to prove that the victim acted in conformity with that character trait in the incident where the killing occurred. *State v. Bazan,* 90 N.M. 209, 561 P.2d 482 (Ct.App.1977); *State v. Alderette,* supra.

Although Evidence Rule 404 was authority for admission of the tendered character evidence, the evidence was not to be admitted unless tendered in the form required by Evidence Rule 405. *State v. Bazan,* supra.

Evidence Rule 405 states:

(a) *Reputation or opinion.* In all cases in which evidence of character or a trait

of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

(b) *Specific instances of conduct.* In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

Defendant sought admission of the tendered evidence to show that the victim was a violent person and had carried a gun on previous occasions. As the brief-in-chief points out, the evidence was tendered "to show that the deceased acted aggressively in conformity with his character." Thus, admissibility was sought on the basis of Evidence Rule 404 and not on the basis that the victim's character was an essential element of any defense, including the self-defense claim. See *State v. Bazan,* supra.

■ Almost all of the evidence tendered by defendant went to specific instances of conduct. Specific conduct evidence to show character is not admissible unless the character involved is an essential element of a charge, claim or defense. Evidence Rule 405(b). Specific conduct evidence is not admissible to prove a pertinent trait of character under Evidence Rule 404. When Evidence Rule 404 is the authority for the admission of character evidence, the method of proof must be in conformity with Evidence Rule 405(a). See *State v. Bazan,* supra. The specific instances of conduct tendered by defendant were properly excluded because not admissible under Evidence Rule 405(a). *State v. McCarter,* 93 N.M. 708, 604 P.2d 1242 (1980).

During the redirect examination of one of the four witnesses who testified during the tender, defendant elicited the witness's opinion that the victim was aggressive and violent. This was the sole testimony in the tender in the proper form for admission under Evidence Rule 405(a).

■ The question of admissibility does not and with Evidence Rules 404 and 405. The evidence must also be relevant. Evidence Rule 402; *State v. Bell*, 90 N.M. 134, 560 P.2d 925 (1977). If relevant, the balancing test of Evidence Rule 403 may be involved. See *State v. Day*, 91 N.M. 570, 577 P.2d 878 (Ct.App.1978). If relevant, the trial judge's authority under Evidence Rule 611(a) to control the presentation of evidence so as to make it effective for the ascertainment of truth may also be involved.

Evidence Rule 403 is not involved in this case. There is, however, a question as to the relevancy of the opinion concerning the victim's character. Although there was a vituperative shouting match, there is nothing indicating the victim made any effort to get out of his car; he was in the driver's seat of the car when shot. The only suggestion of any aggression on the part of the victim is stated in the brief-in-chief: "The defendant [as well as other witnesses] testified that he saw a large object in the car that looked to him in the dark like a rifle or shotgun." Defendant fired from a distance of 50-t0-70-feet from the car. Under the facts, an opinion as to the victim's character for aggression and violence was no more than marginally relevant.

■ There is also a question under Evidence Rule 611(a) because the opinion as to the victim's character, offered to prove conduct in conformity with character, went to a collateral matter. Evidence as to collateral matters is within the trial court's discretionary control. *State v. Alderette*, supra; see *State v. Bell*, supra; *State v. Day*, supra. In light of the marginal relevance of the single item of properly tendered character evidence, we cannot hold there was an abuse of discretion in excluding this evidence. See *State v. McCarter*, supra.

The judgment and sentence are affirmed.

IT IS SO ORDERED.

LOPEZ, J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

I dissent.

A. *Defendant was not guilty of voluntary manslaughter.*

Section 30–2–3(A), N.M.S.A.1978 reads:

A. Voluntary manslaughter consists of manslaughter committed upon a sudden quarrel or in the heat of passion.

There is not a scintilla of evidence that defendant shot the victim "upon a sudden quarrel or in the heat of passion."

"All that is required [to make of the killing manslaughter] is sufficient provocation to excite in the mind of the defendant such emotions as either anger, rage, sudden resentment, or terror as may be sufficient to obscure the reason of an ordinary man, and to prevent deliberation and premeditation, and to exclude malice, and to render the defendant incapable of cool reflection." *State v. Kidd*, 24 N.M. 572, 577, 175 P. 772 (1917). "It is well established by the great weight of authority that no mere words, however opprobrious or indecent, are deemed sufficient to arouse ungovernable passion, so as to reduce a homicide from murder to manslaughter." *State v. Trujillo*, 27 N.M. 594, 597, 203 P. 846 (1921); *State v. Nevares*, 36 N.M. 41, 7 P.2d 933 (1932). "Mere sudden anger or heat of passion will not reduce the killing from murder to manslaughter. There must be adequate provocation. The one without the other will not suffice to effect the reduction in the grade of the offense." [*Id.* 44, 7 P.2d 933.]

*Kidd* has been interpreted to mean that generally speaking evidence requiring submission of self-defense will call for a submission of voluntary manslaughter. *State v. Simpson*, 39 N.M. 271, 46 P.2d 49 (1935). In the instant case, the court instructed the jury on self-defense. But what were the undisputed facts?

On the night in question, the deceased drove to defendant's house three different

times. The first two times deceased left angrily. At approximately 11:00 p. m. he returned a third time. There was another exchange of words. At all times deceased remained in his car parked a distance of 50 to 70 feet from defendant. Deceased shouted challenges and obscenities. Defendant went into his house, got a gun and came outside. He pleaded with deceased to leave. The response was continued oral challenges and obscenities. Defendant lay prone behind a rock at the above distance from deceased's car. He was crying. Defendant fired one shot in the air. There was another verbal exchange. None of these verbal exchanges justify a manslaughter verdict.

A second shot was fired that killed deceased while sitting in his car. Defendant shot at the top of the car without any intention of hitting deceased. The killing was not committed upon a sudden quarrel or in the heat of passion. What allegedly frightened defendant was a chimera—a stick projecting out of the car. There was no aggression on the part of deceased. Even though the trial court believed this, as a matter of precaution, it gave an instruction on self-defense. To demonstrate what is meant by self-defense and voluntary manslaughter, see, *State v. Wright*, 38 N.M. 427, 34 P.2d 870 (1934); *State v. Davis*, 36 N.M. 308, 14 P.2d 267 (1932); *State v. Martinez*, 39 N.M. 290, 46 P.2d 657 (1935); *State v. Inman*, 41 N.M. 424, 70 P.2d 152 (1937); *State v. Simpson*, 39 N.M. 271, 46 P.2d 49 (1935); *State v. Ulibarri*, 67 N.M. 336, 355 P.2d 275 (1960).

In overruling *State v. Smith*, 89 N.M. 777, 558 P.2d 46 (Ct.App.1976), the Supreme Court reviewed the law of New Mexico and discharged a defendant convicted of voluntary manslaughter. *Smith v. State*, 89 N.M. 770, 558 P.2d 39 (1976). *Smith* was followed in *State v. Castro*, 92 N.M. 585, 592 P.2d 185 (Ct.App.1979).

Defendant should be discharged.

B. *The trial court erroneously excluded character evidence of the victim.*

In its case-in-chief, the district attorney put a witness on the stand who testified as to the good character of the victim. The good character of the deceased is not a subject of proof in a prosecution against another for killing him where his character has not been attacked by the defense. This testimony allowed defendant to introduce contrary character evidence. *State v. Johnson*, 24 N.M. 11, 172 P. 189 (1918); Underhill's Criminal Evidence, § 647 (5th Ed. 1957); 1 Wharton's Criminal Evidence, § 236 (13th Ed. Torcia, 1972).

Having made decedent's character an issue in the case, defendant offered evidence of the character of deceased. Two principals from deceased's former high school testified as part of the offer of proof that deceased had attacked one of them, and when the other came to rescue, deceased attacked both; that deceased had been expelled from West Mesa High School for carrying a gun; the probation officer testified that deceased had been convicted of carrying a gun illegally, was a violent personality and was on probation. The probation officer had recommended that his probation be revoked. All three men would have testified that in their opinions deceased was a violent and aggressive man.

The court refused this offer for two reasons: (1) that defendant did not know this information at the time of the shooting, and (2) *there was no act or evidence or aggression on part of deceased*; that there was nothing inconsistent with a self-defense instruction and exclusion of this evidence.

From territorial days, in cases of homicide, it was permissible to allow the defendant to show the general reputation of the deceased as to being a lawless and violent character, but specific acts of violence on the part of deceased could not be shown. *Territory v. Lobato*, 17 N.M. 666, 134 P. 222, L.R.A.(NS) 1917A, 1226 (1913), aff'd *Lobato v. New Mexico*, 242 U.S. 199, 37 S.Ct. 107, 61 L.Ed. 244 (1916). Ten years later the court said that "The authorities seem to be in a state of hopeless confusion, announcing rules ranging from that denying proof of specific acts of violence on the part of the

deceased under any circumstances to the other extreme of holding such evidence admissible under all circumstances." *State v. Ardoin*, 28 N.M. 641, 642, 216 P. 1048 (1923). In *Ardoin*, Mr. Justice Botts wrote an excellent essay on the subject of a deceased's reputation, specific acts of conduct and its value to a jury. Some language in *Ardoin* is consistent with Evidence Rule 404(a)(2). *State v. Alderete*, 86 N.M. 600, 604, 526 P.2d 194 (Ct.App.1974).

The time has come once again to delineate those areas in homicide cases that control the admission and exclusion of evidence bearing upon the traits of character and specific acts of conduct of a victim. For an extensive annotation, see *Admissibility of Evidence As To Other's Character Or Reputation For Turbulence On Question Of Self-Defense By One Charged With Assault Or Homicide*, 1 A.L.R.3d 571 (1965).

Exclusive of Evidence Rule 404(a)(2), N.M.S.A.1978, it is reversible error to permit the State in its case-in-chief to admit evidence of the good character of the decedent. To hold that it is harmless error is a convenient method of affirming a conviction. *State v. Alderete, supra*, Sutin, J. dissenting. The majority opinion stated that Rule 404 was not applicable.

Furthermore, "But when the evidence tends to show, *in the slightest degree*, that the killing was in self-defense, *or shows a hostile demonstration by the deceased against the accused at the time of the killing, or even leaves in doubt who was the aggressor*, it is always relevant to show that the deceased was a quarrelsome, desperate and revengeful man, provided it also appears that his reputation as such was known to defendant." [Emphasis added.] Underhill, Id. § 647 at 1553–54. This proviso appears to be a minority view. *Smith v. United States*, 161 U.S. 85, 88, 16 S.Ct. 483, 484, 40 L.Ed. 626 (1896) put it this way in a murder case:

> [U]pon principle, and by the weight of authority, evidence that the deceased was a larger and more powerful man than the

defendant, as well as evidence that the deceased had the general reputation of being a quarrelsome and dangerous person, was competent, *especially* if his character in this respect was known to defendant, which there was evidence in this case tending to show. [Emphasis added.]

In a case where defendant is charged with homicide and the State opens up with the good character of decedent, it is important for the jury to hear adverse testimony. Evidence leading up to decedent's bad character was exemplified by his many challenges and obscenities. To grant the State the right in rebuttal testimony to show the good character of decedent, *State v. Brock*, 56 N.M. 338, 244 P.2d 131 (1952); *State v. McFerran*, 80 N.M. 622, 459 P.2d 148 (Ct. App.1969), and to deny defendant that right in his defense, denies defendant a fair trial. This fact was made evident in Evidence Rule 404(a)(2). An exception exists where defendant introduces evidence of the pertinent trait of character of the victim or where the prosecution rebuts the same, irrespective of self-defense.

Defendant offered decedent's traits of character to show that decedent was the aggressor. Where character is an element of the crime, claim or defense, it may be proved by evidence of reputation, opinion evidence or by specific instances of conduct. Defendant did claim self-defense. *State v. Bazan*, 90 N.M. 209, 561 P.2d 482 (Ct.App. 1977). The discussion of character evidence in *Bazan* is confusing. This is true in the history of this subject matter in New Mexico. I read *Bazan* to mean:

> ... Evidence Rule 404(a)(2) permits the defense to introduce evidence of a pertinent trait of character of ... [decedent] as *victim* of the crime for the purpose of showing that ... [decedent] acted in conformity with that character trait in defendant's case. . . .

> \*   \*   \*   \*   \*   \*

> Specific conduct is ... admissible to prove character of ... [this] type. . . . [90 N.M. 214.]

In the instant case, evidence was offered both in opinion form and in specific violent acts form an acceptable method under Evidence Rule 405.

Generally, the determination of the admission of violent acts of a victim, a collateral issue, rests within the discretion of the trial court. But if the defendant brings himself within the 404(a)(2) exception, trait of character evidence is admissible. *State v. Marquez*, 87 N.M. 57, 529 P.2d 283 (Ct. App.1974).

On character evidence, the rule in New Mexico is, or should be stated as follows:

(1) It is improper for the State to introduce in evidence in its case-in-chief any good traits of character or specific acts of good conduct of the victim. To do so is plain prejudicial error. Evidence Rule 103(d). The primary duty of the State is to prove the guilt of the defendant beyond a reasonable doubt, not the character of the victim. Bad traits of character or specific acts of misconduct of a victim are admissible in evidence by defendant. If the State desires to combat this evidence, it can do so in rebuttal. Defendant is entitled to a fair trial regardless of the competence of an attorney to make any objections. Once the jury has heard the favorable testimony, it is indelibly stamped in the juror's mind.

(2) In every homicide case, a defendant has the right to introduce in evidence any pertinent traits of character or specific acts of conduct of a victim, including prior criminal offenses committed which bear upon his traits of character in the case being tried. Irrespective of a claim of self-defense respect must be shown for the life and liberty of a defendant. The State can meet this challenge in rebuttal. The element of self-defense, once an important factor in attacking a victim's traits of character, was eliminated by Rule 404(a)(2). To deny a defendant the right to introduce such evidence is not harmless error under Rule 51 of the Rules of Criminal Procedure because it is inconsistent with substantial justice.

(3) Plain error vs. harmless error should not be decided on the idiosyncratic attitude of a district judge in the admission or exclusion of character evidence in criminal cases. The determination should not be based upon judicial discretion. Judicial discretion is not a standard to be used in the admission or exclusion of such evidence because it changes from judge to judge. The standard is: Do the traits of character and specific acts of conduct of a victim bear a reasonable relationship to the conduct of the victim which led to his injury or death? It is simply a confirmation or corroboration of the testimony given at trial by defendant and witnesses. The State and the public are protected by countervailing testimony. The final arbiter is the jury.

The exclusion of defendant's character evidence was prejudicial error.

Defendant should be discharged or granted a new trial.