Wayne J. CARTER, a/k/a Michael J. Hinnant, Appellant,

v.

UNITED STATES, Appellee.

Nos. 81–1505, 83–391.

District of Columbia Court of Appeals.

Argued Jan. 17, 1984.

Decided March 26, 1984.

Alan B. Soschin, Washington, D.C., appointed by this court, for appellant.

Daniel S. Seikaly, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, Michael W. Farrell and W. Randolph Teslik, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before NEBEKER and FERREN, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

Charged in a single count indictment with first degree murder while armed in violation of D.C.Code §§ 22–2401, –3202 (1981), appellant was convicted by a jury of the lesser included offense of second degree murder while armed. Id. §§ 22–2403, –3202. Urging reversal of his conviction, appellant makes the following claims: (1) the trial court erred in prematurely admit-ting evidence of the character of the accused and the deceased; (2) he was denied his constitutional right to effective assistance of counsel; (3) the instructions on self-defense were erroneous as a matter of law; (4) the prosecutor's closing and rebuttal remarks were improper and substantially prejudicial; and (5) the court erred in failing to give an immediate cautionary instruction *sua sponte* with respect to a prior inconsistent statement. After examining the record, we have concluded that these assignments of error are lacking in merit, and affirm.

On the evening of May 2, 1981, appellant's mother, Emma Hinnant, was entertaining several people at her home at 1730 Gainsville Street, Southeast. A number of friends and neighbors, including appellant Carter and decedent Leroy Hudson, were present. At one point in the evening, appellant and decedent began to argue. The argument escalated into a shoving match and moved from inside Mrs. Hinnant's house into the front yard. Avia Smith, a neighbor, broke up the fight and appellant retreated into his mother's home. Soon after, however, he emerged armed with a butcher knife. A second fight between decedent and appellant erupted and the two men fell to the ground wrestling. During the ensuing struggle, appellant fatally stabbed Leroy Hudson.

Appellant, testifying on his own behalf, stated that the initial argument inside his mother's house arose when decedent became offended by a remark made by appellant, and he believed that decedent would strike him. He stated, in addition, that when the fight moved to the front yard, Leroy Hudson beat him almost to a state of unconsciousness. Denying that Avia Smith intervened to break up the fight, appellant asserted that he had to struggle to get away from the decedent and that when he finally was able to retreat into his mother's house, he noticed a wound on his leg. Appellant, realizing that he needed medical attention, but fearing that decedent would reinstigate the fight, grabbed a butcher

knife just in case "they run after me while I was trying to get away." Appellant claimed that when he finally emerged from his mother's house, decedent "rushed" him and provoked another fight, and that during the final struggle he did not realize that decedent had been stabbed. He insisted that: "[the decedent] ran into me, in the struggle, the angle we fell, that's how he got stabbed."

## I

Appellant claims now that the trial court erred in permitting the prosecutor to elicit evidence both of his character and of the decedent's character before the character of either man was placed in issue. The government claims that the challenged evidence was relevant to the issue of appellant's claim of self-defense and was properly admitted.

In *Johns v. United States*, 434 A.2d 463, 468 (D.C.1981), this court declared:

[T]he prosecution may not present evidence of the defendant's (bad) character, in order to show likelihood of committing a crime, unless the defendant first places her own (good) character in issue. [Citations omitted.] More specifically, the government cannot rebut a testifying defendant with evidence of her bad character (including general reputation and specific acts) unless the defendant herself has introduced good character evidence, as such; a defendant does not place her character in issue merely by taking the stand as a witness. [Citations omitted.]

In this case, the prosecutor, in cross-examining appellant, elicited an admission that he and the deceased "argue[d] regularly" and sometimes violently. Even if this violated the strictures of *Johns, supra,* the questioning was *de minimis* and at most was harmless error.

Thus, the only real issue here is not the government's effort to present evidence of appellant's violent character, as in *Johns, supra,* but the admission of evidence of the deceased's peaceable character.

Ordinarily, in a homicide trial, the character of the deceased is irrelevant to the question of whether the accused has committed the crime charged. But, where the evidence tends to show, even in the slightest degree, that the killing was in self-defense or leaves any doubt as to the identity of the first aggressor, the peaceful or violent character of the decedent becomes particularly significant and should be admitted. *See Evans v. United States,* 107 U.S.App.D.C. 324, 326, 277 F.2d 354, 356 (1960); C. McCORMICK, EVIDENCE § 193 at 461–62 (2d ed. 1972); *Mode v. State,* 234 Ark. 46, 350 S.W.2d 675 (1961), *cert. denied,* 370 U.S. 909, 82 S.Ct. 1255, 8 L.Ed.2d 403 (1962); *Key v. State,* 211 Ga. 384, 86 S.E.2d 212 (1955); *State v. Brock,* 56 N.M. 338, 244 P.2d 131 (1952); *Solomon v. State,* 489 S.W.2d 547 (Tenn.1972), *cert. denied,* 412 U.S. 923, 93 S.Ct. 2744, 37 L.Ed.2d 150 (1973). Thus, once appellant opens the door to the reputation of the deceased for peace or violence by claiming self-defense, the prosecutor has a corresponding right to rebut with evidence of the non-combative nature of the decedent. WIGMORE, EVIDENCE § 63 at 1350, 1372–73 (Tillers rev. 1983).

While in the instant case there was no factual dispute that appellant had stabbed and killed the decedent, there was a real question at trial as to whether appellant's claim of self-defense was justified. By raising self-defense, appellant was asserting that the decedent had been the initial aggressor in the fatal conflict. Appellant buttressed this claim with his own testimony that Leroy Hudson had provoked the fight, produced the first weapon and stabbed him in the leg. The government, in its case-in-chief, produced eyewitnesses who testified that appellant initiated the fight with Leroy Hudson, and that despite the decedent's efforts to resolve their argument, appellant continued to pursue him. As we have just noted, there were substantially different versions of the incident presented at trial; hence, the decedent's peaceable or violent character was particu-

larly probative of the issue of who was the initial aggressor.

 Appellant argues that this evidence was not admissible because at the time of its introduction, character was not yet in issue. He claims that the government improperly elicited this evidence during its case-in-chief, before defense counsel formally asserted a claim of self-defense. While appellant's assertion is technically correct, we, nonetheless, are not persuaded by his argument. From the facts before us, it appears that the government was on notice that appellant intended to assert the defense of self-defense at trial. This was first revealed in appellant's statement given to the police on the night of his arrest:

> [Leroy Hudson] was beating me and I couldn't defend myself because he outweighed me. He was constantly beating me in my face, so I realized he had a knife and I ran in my mother's house and got a knife. When I got back outside, I asked him why he was hitting me and he stabbed me on the leg because he saw me with a knife. But I seen his knife first, that's why I got me one.

Furthermore, the report following the status hearing in the Superior Court indicated that the theory of appellant's case would be self-defense. Finally, appellant's own testimony and defense counsel's closing remarks reveal that self-defense ultimately became appellant's defense at trial. Therefore, the fact that the government's character evidence was presented prior to appellant's formal assertion of self-defense seems to us to be immaterial. Under other circumstances, a prosecutor may have to delay the introduction of such evidence by recalling those same witnesses to testify in its rebuttal case. However, given the fact that character did indeed become an issue at trial, we are of the opinion that the prosecutor properly anticipated appellant's claim. Under the circumstances, the order in which the character evidence was introduced was merely a matter of sequence and of doubtful prejudice to appellant. *See Giles v. United States*, 432 A.2d 739, 741

(D.C.1981). Thus, while it may have been error for the government to have introduced such evidence in its case-in-chief rather than in its rebuttal case, it was not in our view reversible error.

## II

Appellant also argues that his conviction cannot stand because he was deprived of his Sixth Amendment right to effective assistance of counsel. Specifically, appellant claims that trial counsel failed to (1) make an opening statement on behalf of his client; (2) vigorously challenge the prosecution's introduction of character evidence; (3) object to leading questions of the prosecutor; (4) request an immediate cautionary instruction when the government sought to impeach him with a prior inconsistent statement; (5) examine him effectively concerning prior threats allegedly made against appellant by decedent; (6) object to improper closing and rebuttal arguments of the prosecutor; and (7) object to the trial court's instructions to the jury. Appellant asserts that the cumulative effect of trial counsel's alleged deficiencies denied him effective assistance of counsel.

 When reviewing claims of ineffective assistance of counsel raised on direct appeal, we will reverse the conviction only if there has been gross incompetence of counsel which has blotted out the essence of a substantial defense. *Gaston v. United States*, 442 A.2d 958, 961 (D.C.1982) (quoting *Angarano v. United States*, 312 A.2d 295, 298 n. 5 (D.C.1973), *reh'g en banc denied*, 329 A.2d 453 (1974)). This remedy is only applied in exceptional cases and relief is granted only in the "most severe cases of glaring ineptitude." *Angarano v. United States, supra*, 312 A.2d at 300. In adopting this deferential approach, we recognize that trial counsel must be accorded sufficient latitude to make decisions or judgments which entail the exercise of his professional abilities. Mere errors of judgment as disclosed by hindsight will not constitute ineffectiveness. *Woody v. United States*, 369 A.2d 592, 594 (D.C.1977).

■ Furthermore, in order to prevail on a claim of ineffective assistance of counsel, appellant bears a heavy burden of proving prejudice. *Jennings v. United States*, 431 A.2d 552, 557 (D.C.1981), *cert. denied*, 457 U.S. 1135, 102 S.Ct. 2964, 73 L.Ed.2d 1353 (1982). He must show a causal relation between the alleged incompetence and the failure of his defense. *See Asbell v. United States*, 436 A.2d 804, 807 (D.C.1981); *Wright v. United States*, 387 A.2d 582, 586 (D.C.1978); *Williams v. United States*, 374 A.2d 885, 890 (D.C.1977). In our view, appellant has not sustained this burden.

■ The court has examined the record and holds that the failures complained of do not amount to gross incompetence. While counsel's performance in this regard may not have been a model of perfection, the right to effective assistance of counsel does not mandate a performance which is completely free from error. *Oesby v. United States*, 398 A.2d 1, 8 (D.C. 1979). In the present case, appellant based his claim of inadequate representation upon a variety of tactical decisions made by defense counsel during the course of the trial. Appellant does not complain about trial counsel's lack of diligence or preparation for trial. *See Monroe v. United States*, 389 A.2d 811, 817 (D.C.), *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978). All his claims relate to matters of professional judgment, discretion and trial strategy exercised during the course of the trial. It is not our function, nor should it be, to second guess these types of judgments. *Mitchell v. United States*, 104 U.S. App.D.C. 57, 63, 259 F.2d 787, 793, *cert. denied* 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86 (1958). Many alternative tactics are available to defense attorneys and their actions are often the products of strategic choices made on the basis of their subjective assessment of the circumstances existing at trial. Tactical decisions which may go awry at trial do not constitute ineffectiveness, *Evans v. United States*, 392 A.2d 1015, 1023–24 (D.C.1978), nor do errors in judgment which become apparent in light of well-reasoned hindsight. *Wright v. United States, supra*, 387 A.2d at 586. Thus, based on retrospective review, we refuse to substitute our judgment on such matters for that of defense counsel's.

Moreover, appellant fails to specify any substantial defense which was blotted out by counsel's alleged ineffectiveness. At trial appellant interposed a defense of self-defense, and the record indicates that the substance of this claim was developed at trial and argued to the jury. Consequently, we hold that appellant has failed to prove that counsel's actions at trial, either separately or in the aggregate, constituted ineffective assistance of counsel.

### III

Appellant further complains that twice during its charges on self-defense, the trial court erroneously instructed the jury on the law of self-defense. He first contends that the following charge improperly instructed the jury that the accused has a mandatory duty to retreat before making a claim of self-defense:

> If the defendant could have safely retreated but did not do so, his failure to retreat is a circumstance which you may consider, together with all other circumstances, in determining whether he went farther in repelling the danger, real or apparent, then he was justified in doing under the circumstances. [Before a person can avail himself of the plea of self-defense against the charge of homicide, he must do everything in his power, consistent with his own safety, to avoid the danger and avoid the necessity of taking the life.]

Criminal Jury Instructions of the District of Columbia, No. 5.16 (3d ed. 1980). This claim of error relates only to the bracketed portion of the charge and urges that this language refers to the retreat-to-the wall doctrine which has been specifically rejected by this jurisdiction. *Gant v. United States*, 83 A.2d 439, 440 (D.C.1951). We disagree.

 The propriety of a trial court's instruction is to be determined from the context of the overall charge, without selecting and comparing separate phrases for literal content. *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973); *Charles v. United States,* 371 A.2d 404, 408 (D.C.1977). When examined in isolation, the portion of the challenged instruction appears to impose a duty to retreat. However, taken as a whole, the instruction correctly states the law of this jurisdiction.[1]

Immediately following the portion of the instructions brought into question, the court further charged the jury as follows:

> However, if the defendant actually believed and had reasonable grounds to believe that he was in imminent danger of death or serious bodily harm and that deadly force was necessary to repel such danger, he was not required to retreat or to consider whether he could have safely retreated. He was entitled to stand his ground and use such force as was reasonable and necessary, reasonably necessary under the circumstances to save his life or protect himself from serious bodily harm.

In our view, these subsequent charges place the entire instruction on self-defense in proper perspective and saves it from any fatal ambiguity. Thus, when viewed in its entirety, the instruction correctly informed the jury regarding the law of self-defense in this jurisdiction.

Nonetheless, appellant further claims that the bracketed portion renders the instruction erroneous as it is difficult for the trier of fact to determine from the charge exactly what an accused must do to validly claim self-defense. We disagree.

The portion of the charge immediately preceding the challenged statement properly explains that one's failure to retreat is a single factor which the trier of fact may consider when making its determination respecting self-defense. This statement is followed immediately by the bracketed instruction which further refines that statement. It provides in substance that when an individual reasonably believes that he is in danger of death or serious bodily harm, he may act in a manner "consistent with his own safety." Thus, the jury was clearly instructed that an individual in this jurisdiction, when faced with a life threatening situation, may stand upon his rights and resist the attack to the extent apparently necessary to avoid death or serious bodily harm. Clearly, therefore, the content of the bracketed instruction did not impose upon appellant a mandatory duty to retreat. Rather, it served to clarify a factor which the jury was privileged to consider when evaluating a claim of self-defense.

Appellant claims also that a second misstatement in the trial court's instructions to the jury warrants reversal. Specifically, he argues that the court erroneously instructed the jury on the use of deadly force. What appears from the record is that the court instructed the jury that:

> A person may use a reasonable amount of force in self-defense, including, in some circumstances, deadly force. Deadly force is a force which is likely to cause death or serious bodily harm. A person may *not* use deadly force in self-defense if he actually believes at the time of the incident that he is in danger of serious bodily harm in which he can save himself only by using deadly force against his assailant and if his belief is reasonable. [Emphasis added.]

Criminal Jury Instruction of the District of Columbia, No. 5.14(b) (3d ed. 1978). Appellant claims that including the word "not"

---

1. In the District of Columbia, it is recognized that when an individual is faced with a real or apparent threat of serious bodily harm or even death itself, there is no mandatory duty to retreat. *Gillis v. United States,* 400 A.2d 311 (D.C. 1979). This standard allows a jury to consider whether a defendant could have safely avoided further encounter by stepping back or walking away and thereby to determine whether he was actually in imminent danger of bodily harm. *Id.*

was error rendering that instruction wholly incorrect.

■■■■ At the threshold, we note that this claim of instructional error was not raised at trial.[2] In the absence of a timely objection, appellant bears a heavy burden when, on appeal, he challenges an instruction in which he acquiesced at trial. In these circumstances, reversal is appropriate only where there is plain error. *Hall v. United States*, 383 A.2d 1086, 1088 (D.C. 1978); *Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc). Under the plain error standard, reversal should be granted only if the asserted error clearly prejudices appellant's rights to the extent it jeopardizes the very fairness and integrity of the trial. *Id.* at 709. Applying this standard to appellant's claim, we conclude that the challenged instruction does not rise to the level of plain error.

■■■■ Even where a portion of an instruction is technically incorrect, reversal is not required if the error is "cured by a subsequent charge or by a consideration of the entire charge." *Howard v. United States*, 128 U.S.App.D.C. 336, 340, 389 F.2d 287, 291 (1967) (quoting *Southern Pacific Co. v. Souza*, 179 F.2d 691, 694 (9th Cir. 1950)). Obviously, the court inadvertently misspoke when it used the word "not" in the challenged instruction, since the jury had previously been informed that an individual may use deadly force to defend himself if he truly believes he is in danger of serious bodily harm. Thus, this error was a single instance of sheer inadvertence in an otherwise correct statement of law. Furthermore, our review of the instructions in their entirety indicates that the

trial court on three separate occasions correctly stated the law. Appellant's claim must, therefore, fail since this single misstatement does not constitute plain error.

## IV

Appellant also claims that several instances of prosecutorial misconduct amount to plain error and mandate reversal of his conviction. He complains, *inter alia*, that the prosecutor in his closing and rebuttal arguments injected personal opinions regarding appellant's credibility.[3] Since appellant made no objection at trial to the conduct now challenged, the same standard of review, plain error, is applicable.

■■■■ In reviewing appellant's claim of prosecutorial misconduct, this court must first consider whether misconduct actually occurred, and if so, whether it resulted in "substantial prejudice" to appellant. *Arnold v. United States*, 467 A.2d 136, 137 (D.C.1983); *Duane Dyson v. United States*, 450 A.2d 432, 437 (D.C.1982). To determine whether the behavior in question caused substantial prejudice to appellant, the applicable test is whether the judgment of the jury was in any way substantially swayed by the error. *Gaither v. United States*, 134 U.S.App.D.C. 154, 172, 413 F.2d 1061, 1079 (1969). After carefully reviewing the challenged remarks, we are not persuaded that the jury was substantially swayed by the government's closing remarks.

■■■■ Appellant argues that the prosecutor improperly injected into his closing argument his personal opinion that appellant was untruthful in his testimony at trial.

---

2. It is the "rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). In fact, the Supreme Court has characterized appellate review of a trial court error which was not obviously prejudicial and which the defense did not raise during trial as "extravagant protection." *Namet v. United States*, 373 U.S. 179, 190, 83 S.Ct. 1151, 1156, 10 L.Ed.2d 278 (1963).

3. In addition, appellant specifically claims that the prosecutor argued facts not in evidence, misled the jury with regard to the applicable law, unfairly played to the sympathy and prejudice of the jury and used a prior statement of the appellant as substantive evidence. We hold that these remaining assertions of prosecutorial misconduct are without merit and do not warrant further discussion.

This court has consistently admonished lawyers to refrain from injecting their personal opinions in the course of their arguments to the jury because such advocacy may divert jurors from their roles, *Phillip Dyson v. United States*, 418 A.2d 127, 130 (D.C.1980), particularly when the statements of opinion relate to a defendant's credibility. *McCowan v. United States*, 458 A.2d 1191, 1198 (D.C.1983).

In the instant case, the prosecutor's closing remarks contained references to appellant's testimony. Appellant asserted at trial that he was the only witness to testify truthfully and that all the government witnesses had lied under oath. In response to such testimony, the prosecutor in his closing argument stated:

> It comes as a shock when someone like Michael Hinnant [appellant] sits up there and testifies the way he did yesterday afternoon. It comes as a shock to everyone in the courtroom because you as jurors are not used to listening to people lie.

When read in context of the entire proceedings, it becomes apparent that the challenged comment was an accurate and proper response to appellant's attack upon the credibility of government witnesses. The prosecutor's statement regarding "people" lying was not a reference to appellant's own testimony, but rather, was merely a response to appellant's statements questioning the truthfulness of those individuals who testified for the government. Therefore, a careful reading of the statement, in the context of the entire closing argument reveals that the prosecutor neither directly denounced appellant's testimony as false nor specifically attacked his veracity as a witness, but was a permissible comment refuting appellant's testimony.

Furthermore, even if the prosecutor's remarks were improper, we must notice that the closing arguments were followed immediately by curative jury instructions. During its final charges, the trial court advised the jury that it alone could determine the credibility of witnesses and that the statements and arguments of counsel were not to be considered evidence in their deliberations. We presume the jury understood and followed these directions in rendering its verdict. We conclude, therefore, that the conduct of the prosecutor in this case, however viewed, does not amount to plain error warranting reversal.

■ A brief digression here will be helpful for future trials. With some frequency of late it has become apparent that the trial court permits the bar—most often the prosecution—to ask a series of recapitulation questions on cross-examination culminating, as here, in the witness' response that he is telling the truth and the contrary witnesses are lying. *E.g., Dorman v. United States*, 460 A.2d 986, 991 (D.C. 1983) (Ferren, J., dissenting, quoting from transcript) (opinion vacated pending en banc review). This is inappropriate, for one witness may not express a view or an opinion on the ultimate credibility of another witness' testimony. *Morrison v. United States*, 417 A.2d 409, 413 (D.C.1980); *Kenion v. United States*, 302 A.2d 723, 724 (D.C.1973). *See generally People v. Williams*, 6 N.Y.2d 18, 26, 159 N.E.2d 549, 554, 187 N.Y.S.2d 750, 757 (N.Y.1959); Lilly, *An Introduction to the Law of Evidence* § 29 at 87 (1978); Annot., 20 A.L. R.3d 684, 698 (1968) (invasion of jury's fact finding province).

### V

■ Appellant claims finally that the trial court committed error in not giving *sua sponte* an immediate cautionary instruction to the jury concerning the limited use of a prior inconsistent statement of the accused. *See* Criminal Jury Instruction of the District of Columbia, No. 1.06(A) (3d ed. 1978). Due to appellant's failure to object at trial, he now bears the heavy burden of demonstrating plain error. *See Watts v. United States, supra,* 362 A.2d at 709. We hold that appellant has not sustained his burden. First, appellant at trial never requested an immediate instruction.

Furthermore, the trial court gave a full instruction regarding the limited use of appellant's prior statements at the end of the trial and in its final charges. *See Rink v. United States*, 388 A.2d 52, 57 (D.C. 1978). In light of these facts, we perceive no error.

Having reviewed thoroughly every challenge raised by appellant and finding none requiring reversal, the judgment on appeal is hereby

Affirmed.