**Frederick B. FREEMAN, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 84–385.

District of Columbia Court of Appeals.

Submitted March 12, 1985.

Decided Aug. 1, 1985.

---

Narasimha Swamy, Bethesda, Md., appointed by this court, was on the brief for appellant.

Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Roxanne N. Sokolove, and Vincent W. Caputy, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before PRYOR, Chief Judge, and NEWMAN and TERRY, Associate Judges.

TERRY, Associate Judge:

Appellant was charged with attempted second-degree burglary [1] and destruction of property.[2] A jury found him guilty of the former offense but acquitted him of the latter. On appeal he argues that the evidence was insufficient to sustain his conviction and that the prosecutor, while cross-examining him, committed misconduct by summarizing the testimony of government witnesses and then asking appellant if he knew of any reason why they would lie. The sufficiency argument is entirely without merit. We agree with appellant that the prosecutor's questioning was improper, but we hold that it was not so prejudicial as to require reversal.

## I

Officer Nickie Thomas of the Metropolitan Police and his partner, Officer M.M. Johnson, were on casual clothes duty, driving in Southeast Washington in a private car, when they heard a noise which "sounded like somebody was beating on something ... hitting up against an object, a door, side of a building or something like that." Officer Thomas looked in the direction of the sound and saw two men crouched down on the back porch of a house, banging on the door. Officer Johnson, who was driving, started to make a U-turn while Officer Thomas watched the men on the porch through the rear view mirror. One of the two men was appellant.[3]

While Officer Johnson was bringing the car to a stop, the two men started to walk away from the porch. Johnson and Thomas got out of the car and headed toward them. As the officers approached, appellant dropped a pair of bolt cutters, and he and his companion "took off running." They jumped over a chain-link fence, ran

across the back yard of the neighboring house, and were caught by the officers after jumping over another fence into the back yard of a third house.

The owner of the house where the officers first saw the two men, Mrs. Ladurose Hill, was not home at the time. However, Valerie Rice, her next-door neighbor, was at home and witnessed both the crime and the arrest. Miss Rice testified that she heard a noise, looked out the window, and saw two men "banging" on the screen door at the back of Mrs. Hill's house. She went immediately to call the police. As she was picking up the phone to dial, she saw the same two men run across Mrs. Hill's back yard, jump the fence, run through her own back yard, and jump the second fence. Just as they started across the third yard, they were arrested.[4]

Appellant testified that he and a friend were on their way to Ballou High School "to pick some things up" when they took a short cut through an alley which led into Mrs. Hill's back yard. Neither he nor his friend, he said, went onto Mrs. Hill's porch. Nor did he see a police officer there, but only "a fat guy getting out of a car." He and his friend were "clowning around," and when his friend pushed him and started running up the alley, he started to run after him. Neither one of them jumped over any fences, nor did appellant hear any noise or see anyone on Mrs. Hill's porch.

## II

Appellant contends that the evidence showed nothing but "mere preparation," not an attempt to commit any crime. We disagree.

"Mere preparation is not an attempt, but preparation may progress to the point of attempt. Whether it has is a question of

---

1. D.C.Code §§ 22–1801(b), 22–103 (1981).

2. D.C.Code § 22–403 (1981).

3. The other man is not identified in the record, but it appears that he may have been a juvenile.

4. Mrs. Hill testified that when she came home later that day, she noticed "some marks" on her back door. A crime scene search officer stated that there was some damage to the door and that he found "door chippings" on Mrs. Hill's back porch.

degree which can only be resolved on the basis of the facts in each individual case." *Sellers v. United States,* 131 A.2d 300, 301 (D.C.1957) (footnote omitted). In this case it is clear from the evidence that appellant's conduct went well beyond mere preparation. Both Officer Thomas and Miss Rice saw and heard appellant in the act of trying to break into Mrs. Hill's house. Viewing their testimony in the light most favorable to the government, as we must, we find it more than sufficient to prove an attempted burglary. *Hopkins v. United States,* 274 A.2d 418 (D.C.1971) (testimony of complaining witness that she heard "scraping and chipping noises" as she rode in the elevator of her apartment building to the floor where she lived, that she saw the defendant and another man walk quickly to the elevator when she arrived at her floor, that the other man dropped a screwdriver, and that the complainant then found a hole in her door held sufficient to sustain a conviction of attempted second-degree burglary); *Manning v. United States,* 270 A.2d 504, 505–506 (D.C.1970) (testimony of next-door neighbor identifying the defendant as one of the men who attempted to pry open the complainant's window with a crowbar held sufficient to prove attempted second-degree burglary); *see Baptist v. United States,* 466 A.2d 452 (D.C.1983); *Valentino v. United States,* 296 A.2d 173 (D.C.1972); *Hebble v. United States,* 257 A.2d 483 (D.C.1969). *See also Jones v. United States,* 386 A.2d 308 (D.C.1978), *cert denied,* 444 U.S. 925, 100 S.Ct. 263, 62 L.Ed.2d 181 (1979) (attempted armed robbery); *Williams v. United States,* 283 A.2d 212 (D.C.1971) (attempted destruction of property); *Walker v. United States,* 248 A.2d 187 (D.C.1968) (attempted procuring); *Sellers v. United States, supra* (attempted procuring); *Commonwealth v. Kennedy,* 170 Mass. 18, 48 N.E. 770 (1897) (attempted murder) (Holmes, J.).

5. Appellant's challenge to the sufficiency of the identification evidence is frivolous. Both Officer Thomas and Miss Rice positively identified

■■■■■ Appellant makes much of the fact that the jury acquitted him on the charge of destruction of property. He argues that such a verdict means that no damage was done to the door, and that the evidence therefore cannot sustain the conviction of attempted burglary. Damage to property is not an element of burglary or attempted burglary, however, and in any event the testimony of Mrs. Hill and the crime scene search officer established that the door was damaged. The government suggests that the acquittal on the second count was perhaps due to the trial court's refusal to give an aiding and abetting instruction, coupled with the fact that neither eyewitness was able to say which of the two suspects actually struck the door. We need not concern ourselves with the reasons for the jury's acquittal on the destruction of property charge. Even if we assume that the two verdicts were inconsistent, the courts have consistently held that inconsistent verdicts are permissible. *E.g., United States v. Powell,* —— U.S. ——, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *United States v. Dotterweich,* 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943); *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); *Steadman v. United States,* 358 A.2d 329, 332 (D.C.1976); *United States v. Fox,* 140 U.S.App.D.C. 129, 132 & n. 21, 433 F.2d 1235, 1238 & n. 21 (1970); *see Haynesworth v. United States,* 473 A.2d 366, 368 (D.C.1984).[5]

### III

■■■■ While cross-examining appellant, the prosecutor asked him if he knew of any reason why the government's witnesses might be lying. Defense counsel (not his counsel on appeal) made no objection, nor did he ask the trial court to take corrective action. Citing this court's recent decision in *Carter v. United States,* 475 A.2d 1118 (D.C.1984), *cert. denied* —— U.S. ——, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985), appellant now asks us to reverse his conviction. We

appellant, and he was never out of Thomas' sight from the time he left Mrs. Hill's yard until he was arrested moments later.

hold that the prosecutor's questions were improper but that they do not rise to the level of plain error.

The disputed line of questioning was as follows:

Q. You also heard Ms. Rice testify she saw you out of her window.

A. She said she saw us in the yard. I heard what she said.

Q. Now, the woman who testified that she saw you outside of her window upstairs while you were on the porch of Ms. Hill's home, you don't know Mrs. Rice; do you?

A. No, I don't.

Q. You don't know her socially, professionally, or you don't go out with her; right?

A. Never seen her before in my life.

Q. So, Mr. Freeman, you don't know of any reason why Ms. Rice would take the stand and under oath say that she saw you on the porch—you don't know of any reason that Ms. Rice would take the stand and under oath testify that she saw you on Ms. Hill's porch the morning of October 17, 1983, if that weren't the case; do you?

A. No, I don't.

Q. Now, with regard to the officer who got out of the car, had you ever seen him before?

A. No, I haven't.

 \* \* \* \* \* \*

Q. Now, Officer Nickie Thomas, you don't know him socially or professionally; do you?

A. No, I don't.

Q. So, Mr. Freeman, then you don't know of any reason that he would take the stand and testify under oath that he saw you on the porch and heard a banging sound, and had the other officer stop the car and that he got out of the car and saw you look at him and then take off [from] that porch, drop the bolt cutters and continue running and jumping over fences if that weren't the case; do you?

A. Well, he might have seen somebody on the porch, but he did not see me. And as for bolt cutters, I haven't seen any bolt cutters.

This type of cross-examination was expressly condemned by this court in *Carter v. United States, supra:*

> With some frequency of late it has become apparent that the trial court permits the bar—most often the prosecution—to ask a series of recapitulation questions on cross-examination culminating, as here, in the witness' response that he is telling the truth and the contrary witnesses are lying.... This is inappropriate, for one witness may not express a view or an opinion on the ultimate credibility of another witness' testimony.

475 A.2d at 1126 (citations omitted); *accord, Green v. United States,* 481 A.2d 1310 (D.C.1984); *Sherrod v. United States,* 478 A.2d 644, 653 n. 8 (D.C.1984). We condemn it again in this case.

As a preliminary matter, the government contends that the rule stated in *Carter* is inapplicable to the present case because it applies prospectively only and was announced after the trial in this case had ended. *See Sherrod v. United States, supra,* 478 A.2d at 653 n. 8 ("*Carter* speaks of a prospective prohibition against this manner of questioning"); *Carter v. United States, supra,* 475 A.2d at 1126 ("A brief digression here will be helpful for future trials"). We are not fully convinced that the rule announced in *Carter* is entirely prospective, but we need not decide the point because we are satisfied that reversal is not required in this case.

 This court will reverse a conviction because of prosecutorial misconduct only if the alleged misconduct resulted in substantial prejudice to the defendant. *E.g., McCowan v. United States,* 458 A.2d 1191, 1196 (D.C.1983); *Dyson v. United States,* 450 A.2d 432, 437 (D.C.1982). To determine whether there was substantial prejudice, we must balance the gravity of the misconduct, its relationship to the issue of the defendant's guilt, and any mitigating

efforts made by the trial court against the strength of the government's case. *E.g., Reed v. United States*, 485 A.2d 613, 619 (D.C.1984); *Villacres v. United States*, 357 A.2d 423, 428 (D.C.1976). When, as in this case, no objection to the asserted misconduct was made at trial, we will not reverse a conviction unless the record demonstrates plain error, which we have defined as error "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc) (citations omitted), cited in *McCowan v. United States, supra*, 458 A.2d at 1196–1197.

██ In this case the government's proof of appellant's guilt was very strong. Two eyewitnesses saw and heard appellant and his companion banging on the back door of Mrs. Hill's house. They fled when they saw the police, discarding a pair of bolt cutters, but were immediately arrested. Mrs. Hill's back door was later found to have been damaged. Against this evidence we must weigh the fact that the challenged questioning by the prosecutor related directly to the issue of appellant's guilt, since appellant's defense was one of misidentification. We must also consider the gravity of the misconduct, which amounted to asking appellant to invade the province of the jury by expressing his opinion on the credibility of two other witnesses' testimony. The impact of the misconduct, however, was softened somewhat by the court's general instruction on credibility:

> [I]n weighing the evidence you may consider the credibility of the witnesses. Just as you are the sole judges of the facts, you ladies and gentlemen of the jury are the sole judges of credibility of the witnesses. You alone decide whether to believe a witness or the extent to which that witness should be believed. If there is any conflict in the testimony, you resolve that conflict and determine where the truth lies.

Given the weight of the evidence against appellant, who was arrested while fleeing from the scene of the crime by an officer who saw him committing it, we conclude that the prosecutor's questions did not rise to the level of plain error as we have defined it in *Watts v. United States, supra*. Nevertheless, we are troubled by the recurrence of this particular type of attorney misconduct. This is the fourth case in little more than a year in which we have been presented with the same claim of error.[6] We hope it will be the last.

*Affirmed.*

---

6. *See Carter v. United States, supra; Sherrod v. United States, supra; Green v. United States, supra.*